WASHINGTON HEIGHTS SANITARY DISTRICT, Appellant, v. CITY OF EAU CLAIRE, Respondent.

*No. 396. Submitted June 3, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 317.)

For the appellant the cause was submitted on the brief of *Garvey, O'Brien, Anderson & Kelly,* attorneys, and *John D. Hibbard* of counsel, all of Eau Claire.

For the respondent the cause was submitted on the brief of *Frederick W. Fischer,* city attorney.

CONNOR T. HANSEN, J. The issue presented is whether the city has the right, under the facts presented, to install and maintain new sewer and water lines in an area within the sanitary district, but which had been annexed to the city and which did not have previous sewer service.

The "agreed statement of facts" reflects the following: The area concerns three lots annexed to the city. They abut Nimitz Street. The west one half of Nimitz Street is a city street located within the city limits. The east one half of the street is a town road located within the town of Washington. The city commenced construction of the sewer on Nimitz Street, and the sanitary district secured a temporary restraining order prohibiting the city from proceeding with the construction. Thereafter the parties entered into an agreement whereby the city would provide the three specific properties with sewer service and the action was changed to one for declaratory judgment. Each party specifically waived any procedural advantage that might inure to it by such change in the nature of the action.

By virtue of the annexation, less than half of the property owners residing in the sanitary district were annexed to the city. At least one of the private sewage disposal systems located on the properties was improperly functioning and the construction of the sewer extension by the city was to alleviate this problem. The city could readily extend its sewer services to the properties in question. However, the nearest sanitary district sewer main was approximately one mile from the properties and the sanitary district could not readily extend sewer services to these properties.

The "agreed statement of facts" also set forth that:

"The parties agree with, and stipulate to, such findings of fact.

"The court then held that the City of Eau Claire does have the right to 'construct, install, maintain and operate a water or sewer line within the confines of the Washington Heights Sanitary District lying within the limits of the City of Eau Claire to serve properties therein where the sanitary district has no existing installation which is part of the district's existing water/sewage [sewerage] system which has been designed and installed to serve said properties."

The stipulated facts make reference to "three other properties located within the boundaries of the sanitary district, but not within the city's corporate boundaries." No consideration was given to the foregoing factual situation in the decision of the trial court. Neither is it briefed nor argued on appeal. Therefore, we do not consider this appeal presents an issue as to properties located within the boundaries of the sanitary district but not within the corporate limits of the city.

The resolution of the issue presented centers on the interpretation and construction of sec. 60.31, Stats.,[1] and more particularly sec. 60.31 (2).

[1] "60.31 **Alteration of sanitary districts.** (1) (a) When any territory which includes an entire town sanitary district shall be

The sanitary district argues that, although the new territory had been annexed to the city, the city did not

incorporated as a city or village, or when such territory shall be annexed to any city or village, such sanitary district shall thereupon be dissolved.

"(b) The property of such district shall pass to the city or village and all assets and liabilities of any such district shall be assumed by such city or village. If any mortgage bonds or mortgage certificates are outstanding the transfer of the property shall be subject to such bonds or certificates. If any general obligation bonds are outstanding the city or village shall cause to be levied and collected upon all taxable property in such city or village in one sum or in annual instalments an irrepealable tax in an amount necessary to pay the interest and principal of such bonds when due.

"(c) Special assessments levied by the former district shall continue to be collected by the city or village and shall be applied to the purpose for which the original assessment was made.

"(2) (a) When any territory which includes less than an entire town sanitary district shall be incorporated as a city or village or when such territory shall be annexed to a city or village then paragraphs (b) and (c) shall apply as of the date of incorporation or annexation as to future incorporations and annexations and as of June 12, 1951 as to incorporations or annexations which have previously occurred.

"(b) There shall be a division of assets and liabilities in accordance with 66.03, except that the ownership of any water or sewerage system shall be determined as provided by (c) of this subsection.

"(c) Any water or sewerage system, including all mains and all property of the system, shall belong to and be operated by the sanitary district or the city or village, in whichever the major portion of the patrons shall reside on the date specified in par. (a), unless other provision shall be made by agreement of the governing body of the city or village and the sanitary district commission. Express power is hereby granted to the governing body of the city or village and the sanitary district commission to contract with each other relative to the operation and property of any water or sewerage system. Special assessments levied theretofore shall continue to be collected by the district or city or village which is operating the facilities and shall be applied to the purpose for which the original assessment was made.

have the authority to install new sewer facilities in an area which was now within the boundaries of both the sanitary district and the corporate limits of the city.

In considering the district's argument that it had authority to put new sewer facilities into operation to service these three lots, in spite of the fact that the property had now been annexed to the city, the trial court observed:

"Section 60.31, Statutes, obviously is intended to create an orderly dissolution or division of a town sanitary district which has been invaded by annexation by a neighboring city or village. There is no doubt that the sanitary district is empowered to continue to supply sewer and water services within the annexing city or village, and to employ facilities and installations existing at the time of the annexation.

"The issue to be determined here is whether the town sanitary district is charged with the responsibility or granted the right to make new installations within its original boundaries and within the limits of the city or village."

Sec. 60.31 (2) (e), Stats., concerns previously existing systems. In the instant case the city was constructing a new sewerage line and thus the residences of the major portion of the patrons within the area becomes immaterial.

"(d) In determining the major portion of the patrons each location served shall be considered as one patron irrespective of the manner in which the title to the property may be held.

"(e) When the responsibility for continuing the operation is vested in the sanitary district it shall continue, except by agreement, until the proportion of users changes so that a majority of the patrons shall reside in the city or village, at which time the property and the responsibility shall shift to the city or village.

"(3) No city or village which secures a system pursuant to this section shall be required to serve an area outside its corporate limits greater than that included in the district at the time of annexation or incorporation, but shall continue to serve the area previously included within the sanitary district."

On appeal, the district argues that nothing in sec. 60.31, Stats., denies it the right to provide such service; that although the city has exclusive control over its city streets, it could not arbitrarily prevent the district from excavating those streets; that the district has the legal authority to finance such new construction if it was desired. Finally, the district argues that since it has not otherwise reached an agreement with the city on the issue of serving these three properties, it remains the responsibility of the district alone to service these properties because of the mandate of sec. 60.31 (2) (e) and (3). These arguments by the district are not persuasive. This controversy is not centered around the right or responsibility of the district but the rights and responsibility of the city. The city was the party which commenced construction of this sewer line and against this action by the city the district sought and obtained a temporary restraining order. Thus, the issue is the city's right to construct this sewer line. Nothing in sec. 60.31, Stats., denies the city the right to construct new sewer facilities for annexed areas which are within the limits of a sanitary district but which were not serviced by that district. Sec. 60.31 (2) (a), in pertinent part, provides that "[w]hen any territory which includes less than an entire town sanitary district . . . shall be annexed to a city . . . paragraphs (b) and (c) shall apply as of the date of . . . annexation . . . ."

Sec. 60.31 (2) (c), Stats., provides, in pertinent part, that "[a]ny water or sewerage system, including all mains and all property of the system, shall belong to and be operated by the sanitary district of the city or village, in whichever the major portion of the patrons shall reside. . ." on the date of annexation. If this dispute centered around existing facilities, the district's arguments would be more persuasive. However, this area was being provided with new services by the city and

thus sec. 60.31 (2) (a) would not require a determination of where the majority of patrons reside.

Also sec. 60.31 (2) (e), Stats., establishes responsibility for operation of a system based upon the portion of *users* residing in a city or village. Here, we are not concerned with an area in which users of the facilities of the sanitary district reside, but with the installation of a new service.

No dispute has been raised, or exists, as to the propriety of the city's annexation of this property. Thus, the property must be considered to be properly within the corporate limits of the city. Secs. 62.11 (5), 62.14 (6), and especially 62.18, Stats., give the city the authority to extend its sewer line by constructing and maintaining the new sewers in this newly annexed area.

"The establishment and maintenance of a sewer system by a municipality is usually regarded as an exercise of its police power. . . . The drainage of a city in the interest of the public health and welfare is one of the most important purposes for which the police power can be exercised. . . ." 11 McQuillin, Municipal Corporations, *Sewers and Drains*, pp. 195, 196, sec. 31.10.

Sec. 60.31, Stats., sets forth a reasonable procedure to be used in providing sewer service to properties within the boundaries of a sanitary district which are annexed to a city or village. The statutory grant of authority to the sanitary district does not give the district complete authority and responsibility for all sewage treatment facilities in the annexed area including all new facilities to be constructed. The trial court correctly construed and applied the provisions of the applicable statutes as they relate to the facts of this case.

*By the Court.*—Judgment affirmed.