TOWN OF HALLIE, and Town of Hallie Sanitary District No. 1, Plaintiffs-Appellants,†

v.

CITY OF EAU CLAIRE, Defendant-Respondent.

Court of Appeals

*No. 92–1670. Oral argument December 16, 1992.—Decided December 29, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Edith F. Merila* and on the briefs of and orally argued by *Timothy D. Fenner* of *Axley Brynelson* of Madison.

On behalf of the defendant-respondent, the cause was submitted on the brief of and orally argued by *Frederick W. Fischer* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Town of Hallie and the Town of Hallie Sanitary District No. 1 appeal a summary judgment dismissing their complaint against the City of Eau Claire. They contend that the trial court erred by refusing to apply sec. 60.79(2)(d), Stats., where it found that the sanitary district had no patrons. They argue that subsec. (d) must always be applied when the district has incurred debt and that the term "patrons" includes persons intended to be served by a water supply system to be constructed. Because we conclude that sec.

60.79(2)(d) applies only when a water supply system exists in the annexed area at the time of annexation, the judgment is affirmed.

Because the parties agree that the facts are undisputed, summary judgment is appropriate. Section 802.08(2), Stats. The groundwater in parts of the town had been contaminated by volatile organic compounds and other hazardous waste. A proceeding was commenced before the Environmental Protection Agency, which determined that a public water system should be installed in the area to replace the private wells that had been contaminated.

On September 14, 1989, the town created the sanitary district to plan, design, construct and operate a public water supply system within the affected area.[1] The sanitary district borrowed $20,000 on October 2, 1989, to finance the design stage of the project. During the period from November 19, 1989, until July 10, 1990, the city enacted five ordinances annexing portions of property within the sanitary district's boundaries. At the time of the annexations, neither the sanitary district nor the city provided water service to the affected area and no water mains had been constructed. On June 14, 1990, the Wisconsin Public Service Commission authorized the sanitary district to become a public water utility and to construct a water system upon approval by the EPA and the Wisconsin DNR. The PSC did not address the issue whether the sanitary district or the city had jurisdiction to provide water service to the annexed area.

The sanitary district filed a summons and complaint against the city seeking a declaratory judgment

---

[1] "Affected area" refers to the entire area including the sanitary district and the annexed area. "Town of Hallie affected area" refers to the portion of the sanitary district outside of the annexed area.

determining who has the right to provide water service in the town of Hallie affected area and in the annexed area, and an injunction preventing the city from construction in any of the disputed area. The sanitary district later moved the trial court for summary judgment. At the time of the motion, the city had constructed a water supply system and was serving all actual and potential patrons in the annexed area. The city had allowed the sanitary district to construct some water mains near and within the annexed area to allow it to supply water to other customers in the town of Hallie. In some instances, the sanitary district's water mains parallel the city's water mains. At no time has the sanitary district provided water services to anyone in the annexed area.

The trial court granted summary judgment to the city. In its application of sec. 60.79(2), Stats., the trial court determined that the sanitary district had no patrons in the affected area because it was not serving any properties with water. The trial court concluded, therefore, that sec. 60.79(2)(d), providing for a determination of who owns the water supply system based on the number of patrons residing in the area, did not apply. The court ruled that because no statute gave the sanitary district authority to provide water in the annexed area, the city has exclusive jurisdiction as a matter of law to provide water service in the annexed area.

This case involves interpretation and application of a statute to undisputed facts, which we review as a question of law without deference to the trial court. *Brandt v. LIRC*, 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991). The purpose of the rules of statutory construction is to give effect to the legislative intent. *State*

*v. Pham*, 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). When determining legislative intent, this court first examines the language of the statute itself and will resort to extrinsic aids only if the language is ambiguous. *P.A.K. v. State*, 119 Wis. 2d 871, 878, 350 N.W.2d 677, 681–82 (1984).

The parties agree that the statute to be interpreted and applied in this case is sec. 60.79(2), Stats., which provides, in pertinent part:

> (b) The city . . . and the town sanitary district are subject to pars. (c) to (e) if territory constituting less than the entire town sanitary district is annexed or incorporated and:
>
> . . ..
>
> 2. The territory is not served by the town sanitary district with a water supply or sewerage system, but the district has obligations related to the territory subject to incorporation or annexation which require payment for longer than one year following the incorporation or annexation.
>
> (c) The city . . . and the town sanitary district shall divide the assets and liabilities of the town sanitary district under s. 66.03, except that the ownership of any water supply or sewerage system shall be determined under par. (dm).
>
> (d) 1. Any water supply or sewerage system, including all mains and all property of the system, shall belong to and be operated by the district or the city . . . in whichever the major portion of the patrons reside on the date of annexation . . ..
>
> 2. In determining the major portion of the patrons, each location served shall be considered as one patron irrespective of the manner in which the title to the property is held.
>
> (dm) If the responsibility for continuing the operation is vested in the town sanitary district, it shall continue, except by agreement, until the propor-

tion of users changes so that a majority of the patrons reside in the city . . . at which time the property and the responsibility shall shift to the city . . ..

(e) Any special assessment levied before the incorporation or annexation shall continue to be collected by the district or city . . . which is operating the water supply or sewerage system and shall be applied to the purpose for which the original assessment was made.

We conclude that sec. 60.79(2) is not ambiguous.

The sanitary district contends that the trial court erred by concluding that subsec. (d) did not apply to this case. It argues that subsec. (b)2 provides that the existence of debt related to the annexed area mandates the application of the provisions of subsec. (d). We do not agree. The existence of debt permits the application of subsec. (c) through (e) only to the extent that they are relevant to the facts of the case. We examine each subsection's provisions to determine whether those provisions are relevant and apply only the subsections that the facts before us require us to apply.

We conclude that subsec. (b) requires selective, not automatic, application of subsecs. (c) through (e). The current language unambiguously demonstrates the legislature's intent to apply subsecs. (c) through (e) selectively because it provides that the parties *are subject to* those subsections. This contrasts with the previous statute providing that subsections similar to present subsecs. (c) and (d) *shall apply*. This change in language evidences the legislature's intent to no longer require automatic application of those subsections if certain conditions exist.

Furthermore, subsec. (d) by its terms is irrelevant to the present case because it requires that a water supply

system exists within the annexed area at the time of annexation. Here, both parties concede that no water supply system existed in the annexed area at the time of annexation. We conclude that subsec. (d) is irrelevant to this case for the following reasons.

When construing a statute, we consider the entire section and the related sections and construe them together. *Pulsfus Poultry Farms, Inc. v. Town of Leeds,* 149 Wis. 2d 797, 804, 440 N.W.2d 329, 332 (1989). Ownership and the right to provide service is determined under subsec. (d) by determining where the major portion of patrons reside at the time of annexation. The term "patron" is defined in sec. 60.79(2)(d)2 as "each location *served* . . .." (Emphasis added.) The sanitary district argues that the correct interpretation of "patron" includes persons who would potentially receive water service from the district. We do not agree. The plain language of the statute demonstrates that a patron is someone who is already receiving water service from a water supply system that exists at the time of annexation. If we insert the definition of patron from subsec. (d)2 into subsec. (d)1, it provides that ownership of a water supply system is determined according to whether "the major portion of [locations *served*]" exist within the annexed area or within the sanitary district.

Second, subsec. (d)1 uses the term water supply system, which is a specifically defined term. Section 60.70(10), Stats., provides that a water supply system consists of "all structures, conduits and appurtenances by means of which water *is delivered* to consumers except piping and fixtures inside buildings served and service pipes from building to street main." (Emphasis added.) The definition does not contemplate structures that have not yet been constructed and are not yet deliv-

456

ering water to customers. We can find nothing in the statutes that supports the sanitary district's argument that subsec. (d) applies to grant ownership of water supply systems yet to be constructed to the sanitary district.

Finally, the sanitary district contends that the legislature, when it amended the statute in 1983, intended to change the result our supreme court reached in *Washington Heights Sanitary Dist. v. Eau Claire*, 64 Wis. 2d 330, 219 N.W.2d 317 (1974). It argues that interpretation of subsec. (d) to require the existence of a water supply system in the annexed area is directly contrary to the legislative intent, because the same outcome reached in *Washington Heights* would necessarily result here.

*Washington Heights* dealt only with the issue of who had the authority to construct and operate a water supply system in an annexed area where no water supply system existed at the time of annexation. It did not address the situation we have here, that is, no water supply system exists in the annexed area but the sanitary district has incurred debts related to the annexed area. Similarly, the then existing statute concerned only previously existing water supply systems and none of its provisions applied if no water supply system existed. *Id.* at 335, 219 N.W.2d at 319. Section 60.79(2), Stats., as it now exists, applies to the present situation, to the extent that its provisions are relevant because it deals with the existence of debt incurred by the sanitary district, an issue not addressed in *Washington Heights*.

When the legislature amended the statute to its current form, it intended to address the question that *Washington Heights* did not address. By adding subsec. (b)2 and changing former subsec. (1)(c) to subsec. (2)(e), the legislature addressed the issue of how debt incurred by a sanitary district is affected when a city annexes portions of the sanitary district. Subsections (c) and (e)

apply to apportionment of two types of debt, regardless of whether a water supply system is in place at the time of annexation. Subsection (d) applies to ownership of a water supply system if one exists at the time of annexation, regardless of whether the sanitary district has debt. If the sanitary district has an existing water supply system and debt at the time of annexation, ownership of the system is determined under subsecs. (d) and/or (dm) and the debt is allocated under subsecs. (c) and/or (e), depending on the type of debt. In the absence of an existing water supply system and debt, subsecs. (c)-(e) codify the result reached in *Washington Heights*.

■ In examining this statute as it applies to the facts of the present case, we conclude that because no special assessments have been levied, subsec. (e) is irrelevant and does not apply to this case. Subsections (d) and (dm) are irrelevant and do not apply to this case because, at the time of annexation, there was no continuing operation of a water supply system. Subsection (c) is relevant and requires an apportionment of the debt the sanitary district incurred prior to annexation.

*By the Court.*—Judgment affirmed.