James J. NOVAK, and James J. Luscher, Plaintiffs-Appellants,

v.

MADISON MOTEL ASSOCIATES, and Madison Lounge, Inc., Defendants-Respondents.†

Court of Appeals

*No. 93–3234. Submitted on briefs Augut 11, 1994.—Decided October 20, 1994.*

(Also reported in 525 N.W.2d 123.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *James J. Novak*, pro se and *James J. Luscher*, pro se.

For the defendants-respondents the cause was submitted on the briefs of *Mark J. Steichen* of *Boardman, Suhr, Curry & Field* of Madison.

Before Eich, C.J., Dykman and Vergeront, JJ.

VERGERONT, J.  James Novak and James Luscher appeal from an order denying their motion for summary judgment and dismissing their amended complaint, which alleges that a "ladies drink free" night violates Wisconsin's public accommodation statute, § 101.22(9), STATS. We conclude that the "ladies drink free" night violates § 101.22(9)(a)2 and therefore reverse.

The facts are undisputed. Madison Motel Associates and Madison Lounge, Inc. (collectively "Madison Motel") operate a bar known as "Pearls" in the Holiday Inn East Towne in Madison. In September 1992, Pearls offered promotions every day of the week to attract business. These promotions included "Satellite Sunday" which offered:

MADISON'S BEST NFL COVERAGE
AND FABULOUS FOOD
LADIES DRINK FREE
3 P.M.-9 P.M.
DJ 6 P.M.-CLOSE

Wednesday nights featured "Men's Night Out," which offered:

SPECIAL EXPORT LIGHT
2 FOR $2.25
FREE DARTS 9 P.M.-MIDNIGHT

The promotions on the other nights of the week involved either no charge or reduced charges for particular drinks and food for all patrons.

Novak, Luscher, a male companion, and a female companion went to Pearls one Sunday afternoon during September 1992. Novak and Luscher each purchased a bottle of Labatts beer for $1.50. The regular price for Labatts beer is $2.75, but there was a special on Labatts beer on that Sunday afternoon. Novak and Luscher observed women receiving free drinks, and their female companion received a free drink. Novak requested and was initially refused a free drink. Novak and Luscher went to the service desk of the hotel and registered a complaint. Novak was then offered a free drink ticket, which he accepted.

The amended complaint alleged violations of § 101.22(9)(a)1 and 3, STATS.,[1] and § 3.23(5)(a) and (b),

---

[1] Section 101.22(9)(a)1, 2 and 3, STATS., provides:

(9) PUBLIC PLACE OF ACCOMMODATION OR AMUSEMENT. (a) No person may do any of the following:
1. Deny to another or charge another a higher price than the regular rate for the full and equal enjoyment of any public place of accommodation or amusement because of sex, race, color, creed, disability, sexual orientation, national origin or ancestry.

. . . .
2. Give preferential treatment to some classes of persons in providing services or facilities in any public place of accommodation or amusement because of sex, race, color, creed, sexual orientation, national origin or ancestry.
3. Directly or indirectly publish, circulate, display or mail any written communication which the communicator knows is to the effect that any of the facilities of any public place of accommodation or amusement will be denied to any person by reason of sex
. . . .

MADISON GENERAL ORDINANCES.[2] In ruling on Madison Motel's motion to dismiss for failure to state a claim, the trial court concluded the amended complaint did not state a claim under § 3.23(5)(a), GEN. ORD., because Madison Motel had not charged a higher price than the regular rate for the beer purchased by Novak and Luscher. The amended complaint did state a claim under § 101.22(9)(a)2, STATS., the trial court held, because the "ladies drink free" night was a sex-based business practice giving preferential treatment to women. The court did not directly address § 101.22(9)(a)1, STATS., in this decision, but that section's wording is similar to that of § 3.23(5)(a), GEN. ORD.

Novak, Luscher, and Madison Motel then stipulated to a dismissal of the claims under the Madison ordinance and under § 101.22(9)(a)1 and 3, STATS., and to an amendment of the complaint to allege a claim under § 101.22(9)(a)2. They also stipulated that Novak and Luscher's motion for summary judgment, already filed, would be treated as a motion based on § 101.22(9)(a)2, rather than on § 101.22(9)(a)1.

In its decision on the motion for summary judgment, the trial court concluded there was no violation of § 101.22(9)(a)1, STATS., because Madison Motel did not charge a higher price than the regular rate for the drinks Novak and Luscher purchased. The trial court also concluded that there was no violation of § 101.22(9)(a)2 because the services and facilities provided to Novak and Luscher by Madison Motel were the same as those provided to women, and it dismissed

---

[2] Section 3.23(5)(a) and (b), MADISON GENERAL ORDINANCES, is identical to § 101.22(9)(a)1 and 3, STATS., with respect to gender.

the complaint. Novak and Luscher appealed, raising arguments under both § 101.22(9)(a)1 and 2.

We review summary judgments *de novo*, without deference to the trial court's conclusions. *Bank of Sun Prairie v. Esser*, 155 Wis. 2d 724, 730, 456 N.W.2d 585, 587-88 (1990). Since there are no material facts in dispute, summary judgment must be granted if Novak and Luscher are entitled to judgment as a matter of law. The construction of a statute and its application to a particular set of facts is a question of law, which we also decide without deference to the trial court's conclusions. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773, 778 (1989).

We consider first whether the "ladies drink free" night violates § 101.22(9)(a)2, STATS., by giving "preferential treatment" to women in the "services or facilities" of the bar. There is no dispute that a bar is a public place of accommodation.[3] Madison Motel contends that drinks in a bar are not services or facilities but rather goods and therefore are not covered by this section. We disagree. A bar is providing a service when it sells drinks to customers for consumption at the bar. Customers go to a bar to buy drinks, but also to sit in the establishment and, usually, to socialize. A bar offers more to its customers than the opportunity to purchase goods, which they could purchase at retail stores. We conclude that the phrase "preferential treatment" in "services or facilities" is clear on its face, and includes any treatment in the offering of services or facilities by a bar that gives preference based on the

---

[3] Section 101.22(1m)(p)1, STATS., specifically defines a "public place of accommodation or amusement" to include "taverns."

categories enumerated—sex, race, color, creed, sexual orientation, national origin, and ancestry.

Madison Motel also points to the prohibition in subd. 1 against charging "a higher price than the regular rate for the full and equal enjoyment" of a public accommodation, arguing that since that subdivision prohibits only higher prices, subd. 2 must be interpreted to permit lower prices for drinks, or free drinks. Otherwise, contends Madison Motel, subd. 1 is superfluous.

The aim of statutory construction is to arrive at the intent of the legislature. In construing a statute we are to favor the construction that fulfills the purpose of the statute over one that defeats that purpose. *Brown v. Thomas*, 127 Wis. 2d 318, 323, 379 N.W.2d 868, 870 (Ct. App. 1985). We must presume the legislature intended an interpretation that advances the objective of the statute. *GTE North Inc. v. Pub. Serv. Comm'n*, 176 Wis. 2d 559, 566, 500 N.W.2d 284, 287 (1993). While terms of a statute are to be interpreted to avoid superfluousness if possible, that is only one rule of statutory construction. It is not absolute. The purpose of all rules of statutory construction is to give effect to the legislative intent. *Town of Hallie v. City of Eau Claire*, 173 Wis. 2d 450, 453-54, 496 N.W.2d 656, 658 (Ct. App. 1992).

The obvious purpose of § 101.22(9), Stats., is to prohibit in places of public accommodation discrimination based on the classes enumerated in the statute. This subsection is contained in § 101.22, which is entitled "Equal Rights." Section 101.22 deals with discrimination in housing (§ 101.22(1)-(6m)) and discrimination by licensed or chartered persons

(§ 101.22(8)), as well as public accommodations. Madison Motel's interpretation of § 101.22(9)(a)2 does not advance the purpose of ending discrimination in public accommodations. Its interpretation would permit offering free or reduced-price drinks (or other discounts) to persons of one race and not to persons of another race, or to persons of one religion and not to persons of another religion. This is inconsistent with the obvious goal of the statute and is an unreasonable interpretation of the statute. We will not adopt an interpretation of a statute that leads to an unreasonable result when there is a reasonable alternative. *Williams v. City of Madison*, 15 Wis. 2d 430, 439, 113 N.W.2d 395, 400 (1962).

The reasonable interpretation of subd. 2, and the one in keeping with the purpose of § 101.22(9), STATS., is that it prohibits price differentials or discounts based on the categories specified in the statute. It is true, as Madison Motel contends, that under this interpretation certain conduct—such as charging a higher than regular price on drinks to only one gender or to only one race—is a violation of both subdivisions. In that sense the portion of subd. 1 that prohibits charging another "a higher price than the regular rate" is superfluous. But that result does not persuade us to adopt a narrow interpretation of subd. 2 that is at odds with the broad language of that subdivision and inconsistent with the purpose of § 101.22(9). *See Wood County v. Bd. of Vocational, Technical & Adult Educ.*, 60 Wis. 2d 606, 615, 211 N.W.2d 617, 621 (1973) ("[T]his court can only *attempt* to construe a statute so that all parts have a function and meaning. If the legislature has created redundancies, it is not up to this court to create functions for such parts") (emphasis added).

Madison Motel also argues that subd. 1 is the more specific provision because it addresses pricing, and subd. 2 is the more general provision. Since subd. 1 prohibits higher prices, Madison Motel argues, "preferential treatment" cannot be read to prohibit lower prices. The rule of statutory construction that favors the specific over the general statutory provision applies only where there is a conflict between the two provisions. *Town of Nasewaupee v. City of Sturgeon Bay*, 146 Wis. 2d 492, 495, 431 N.W.2d 699, 700 (Ct. App. 1988). The fact that some practices prohibited by subd. 1 are also prohibited by subd. 2 does not create a conflict.

We hold that the language of subd. 2 is clear, even when read in conjunction with subd. 1, and prohibits offering free drinks to women and not men. Accordingly, legislative history cannot be used to demonstrate that the statute, unambiguous on its face, is ambiguous. *State v. Martin*, 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900, 905 (1991). However, we may look to legislative history to reinforce our conclusion that the subdivision, when viewed historically, is indeed unambiguous. *Id.* We consider the legislative history and conclude it supports our reading of subd. 2.

The earliest version of this statute did not apply to sex. Passed in 1895, it prohibited "denying to any person, except for reasons by law applicable alike to all persons [of every race and color], the full enjoyment of any of the accommodations, advantages, facilities or privileges . . . or . . . requiring any person to pay a larger sum than the regular rate charged . . . for such or any of such advantages, facilities, accommodations or privileges . . . ." Laws of 1895, ch. 223, § 2.

In Laws of 1955, ch. 696, the statute was renumbered and rewritten in what the Legislative Council described as a "restatement" of the earlier statute. The present subd. 1 came into existence at that time, except that the only classes referred to were "race, color, creed, national origin or ancestry."

The reference to "sex" was added in Laws of 1975, ch. 94 (relating to eliminating from the statutes distinctions between persons based on sex) and ch. 256 (relating to discrimination in public accommodations). This legislation created what are now §§ 101.22(9)(a)2 and 101.22(9)(b) and (c), STATS.[4] Section 101.22(9)(b) and (c) make clear that the addition of sex to the statute was not intended to prohibit separate dormitories, public toilets, etc.[5] According to the analysis by the Legislative Reference Bureau, the purpose of the legislation was to "eliminate . . . from the statutes certain distinctions based on sex. It prohibits sex discrimination . . . in public accommodations."[6]

We conclude the addition of subd. 2 is an expression of legislative intent to expand the types of prohibited practices by public accommodations as to all categories specified, at the same time that the legislature added the category of sex. There is no indication in the legislative history that subd. 2 is to be read nar-

---

[4] Laws of 1975, ch. 256, §§ 1, 3 and ch. 94, §§ 84, 85.

[5] Sections 101.22(9)(b)and (c) provide:

    (b)   Nothing in this subsection prohibits separate dormitories at higher educational institutions or separate public toilets, showers, saunas and dressing rooms for persons of different sexes.

    (c)   Nothing in this subsection prohibits separate treatment of persons based on sex with regard to public toilets, showers, saunas and dressing rooms for persons of different sexes.

[6] Legislative Reference Bureau drafting record, Laws of 1975, ch. 94.

rowly to permit charging lower prices than the regular rate based on the referenced categories.

The trial court concluded that the legislature intended to permit "ladies' night" and "men's night" promotions because these events are common and the legislature has had many opportunities to prohibit them but has not done so. This conclusion overlooks the fact that when the legislature made the public accommodations statute applicable to sex, it did consider the situations it wanted to except from coverage. The legislature specifically provided that the statute does not prohibit different treatment of the sexes in certain areas: separate dormitories, toilets, showers, saunas, and dressing rooms are expressly permitted. Had the legislature wished to exclude other types of sex-based distinctions, it could have done so.

The trial court's reasoning suggests that sex-based price differentials are permissible, whereas price differentials based on the other referenced categories might not be. There is no basis in the language of the statute, or its legislative history, to treat sex differently than the other categories specified in the statute, except insofar as para. (b) and para. (c) create exceptions for separate facilities based on sex.

Madison Motel argues that promotions of the type challenged here do not violate subd. 2 because they are not intended to discourage patronage but rather to *increase* patronage by all groups. The record contains no facts relating to the intent or the results of the offer of free drinks to women. But the more important point is that Madison Motel's intent is not relevant. Simply put, promotions may not involve price differentials or other differential treatment based on the categories covered by the statute, whatever the intent. Our interpretation of subd. 2 does not prohibit Madison Motel

from offering a wide array of promotions in the form of reduced or no prices for food, drinks and entertainment. It prohibits only those promotions that base price differentials on the categories specified in the statute.

Madison Motel contends that even if subd. 2 is applicable to the prices it charges for drinks, it did not violate this subdivision because it offered a "Men's Night Out," when men received a discount on beer and free darts. This fact, Madison Motel argues, presents a jury question as to whether it gave preferential treatment to women. We disagree. On the night Madison Motel offered free drinks to women it gave preferential treatment to women. Preferential treatment to men on other nights does not correct that violation.

Because we conclude that Madison Motel's "ladies drink free" night violated § 101.22(9)(a)2, STATS., we do not decide whether it also violated subd. 1 by denying "the full and equal enjoyment" of the establishment.

We reverse the trial court's dismissal of the amended complaint and remand for the entry of an order granting summary judgment to Novak and Luscher and for such further proceedings as are appropriate.

*By the Court.*—Order reversed and cause remanded with directions.