TOWN OF SHEBOYGAN, Town of Sheboygan Sanitary District No. 3 (Water), Chester A. Bahr, Lu Ann Bahr, Dale A. Bahr and Vicky Bahr, Plaintiffs-Respondents,†

v.

CITY OF SHEBOYGAN, Defendant-Appellant.

Court of Appeals

*No. 95–1839. Oral argument May 1, 1996.—Decided June 19, 1996.*

(Also reported in 553 N.W.2d 275.)

†Petition to review denied.

On behalf of the defendant-appellant, there was oral argument and briefs submitted by *Stephen G. McLean*, city attorney.

On behalf of the plaintiffs-respondents, there was oral argument and a brief submitted by *Michael J. Bauer* of *Hopp, Hodson, Powell, Raftery & Bauer* of Sheboygan.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   In July 1994, the City of Sheboygan annexed a 55.3 acre parcel of vacant land immediately north of the city limits. The Town of Sheboygan[1] argues that it is providing water service to this land and thus the Public Service Commission, pursuant to § 196.50(4), STATS., must intervene and determine which municipality is better suited to supply water to the property's future residents. We conclude, however, that § 60.79, STATS., dictates the outcome of this dispute. When the City annexed the subject parcel, it automatically acquired the right to furnish this property with water service as a matter of law.

The subject territory is comprised of two sub-parcels. The City owns 35.3 acres, which is adjacent to the city limits, and the Bahr family owns the remaining 20 acres, which is immediately north of the City's parcel. The City purchased its parcel in March 1994. This land is currently vacant but is slated for future residential development. While the Bahr parcel is also vacant and seemingly suited for comparable development, the Bahrs apparently have no such plans and have objected to the annexation of their land.

---

[1] We collectively refer to all of the respondents as the "Town of Sheboygan."

The City's purchase of the 35.3 acres and subsequent decision to annex the subject territory followed a period of negotiations between the City, the Town and a real estate developer who owns a parcel, which is east of the annexed territory but is still located within the Town. The Town and the City each wanted to provide water service to the planned development.

In November 1993, the Town succeeded and entered into an agreement with the developer to furnish water service for his sixty-lot subdivision. The Town thus had to construct a water main to the property. At first it tried, unsuccessfully, to get an easement from the previous owner of the City's parcel. After the City purchased the property, the Town tried to negotiate with it and also failed. The Town, however, was able to secure an easement from the Bahrs and thus ran its water main through this property to the new subdivision. The Town also installed six hydrants at the edge of the Bahrs' property, believing that they would eventually be needed to protect future development. Construction of the water main and hydrants was completed by May 1994 at about the same time the City was initiating procedures to annex the territory.

In June 1994, the Town sought an injunction to prevent the annexation and a declaratory judgment respecting its right to provide water service to the annexed territory. In support of the injunction, the Town pointed to its recently installed water main which ran through the territory. The Town argued that it was furnishing water service to the territory and that the annexation proceedings should be delayed until the PSC, pursuant to ch. 196, STATS., could determine if there was a risk of duplication of water services by the Town and the City. The Town believed that the potential risk of duplication was an important factor to the

overall issue of whether the planned annexation was in the public's best interest.

The circuit court denied what it termed the Town's "preemptive strike" against the proposed annexation. In its July 7, 1994 order, the court concluded that the Town had no reasonable probability of success of defeating the annexation because of the water service conflict and denied the Town's request for an injunction. *See generally Waste Management, Inc. v. Wisconsin Solid Waste Recycling Auth.*, 84 Wis. 2d 462, 465, 267 N.W.2d 659, 661 (1978) (describing proper grounds for injunctive relief). The circuit court reasoned that § 60.79, STATS., contemplated the type of conflicts over water service supply that the Town was concerned about and that the statute appeared to provide an appropriate remedy for such situations. After the Town lost its claim for an injunction, the City went forward and officially annexed the property on July 18, 1994.

The following March, the circuit court issued its declaratory judgment regarding the conflict over who should furnish water service to the annexed territory. Here, the court moved from its original position that § 60.79, STATS., governed this question and reasoned instead that the PSC had the duty, under § 196.50, STATS., to determine which of these two providers was better suited to furnish water service. After reviewing the parties' stipulation of facts, the court found that the Town was already "furnishing water service" to the territory when the City annexed it. Accordingly, the court ruled that § 196.50(4) required the parties to submit information to the PSC, which would then determine which was better suited to supply the territory. On March 25, 1995, it issued an order enjoining the City from "extending and/or duplicating the water

public utility service in the subject area until such time that the commission has completed its investigation and issued its findings."

The City appeals this decision and raises two arguments. First, it contends that the circuit court made a legal error when it found that the Town was "furnishing water service" to the annexed property as those terms are relevant to ch. 196, STATS. Although the Town had installed a water main running through the property and had placed hydrants at the edge of the territory, the City claims that the Town is not actively providing service to the property because it has no customers on this vacant land. The City also renews the argument it originally made in opposition to the Town's claim for an injunction to stop the annexation. The City explains that § 60.79(2), STATS., controls this case. It argues that this statute gives it sole authority to supply water service to annexed property as a matter of law.

In response, the Town argues that the circuit court correctly interpreted and applied the relevant sections of ch. 196, STATS. Alternatively, the Town argues that § 60.79(2), STATS., should be read to grant it authority to service the recently annexed property because it currently provides water service to the majority of patrons within the immediate area.[2]

The parties have stipulated to the facts. The dispute thus involves the interpretation of §§ 196.50 and 60.79, STATS., and application of these statutes to the

---

[2] We reject the Town's claim that the City waived its right to raise any argument under § 60.79(2), STATS., because it did not pursue it before the circuit court. We have reviewed the record and see that the City squarely presented this argument in its Brief In Opposition To Preliminary Restraining Order and its Reply Brief to the Town's motion for a declaratory judgment.

facts. Statutory interpretation and application of a statute to an uncontested set of facts each present a question of law that we review independently of the circuit court. *See Brandt v. LIRC*, 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991), *aff'd*, 166 Wis. 2d 623, 480 N.W.2d 494 (1992).

We begin with the plain language of § 60.79(2), STATS.,[3] which provides that territory within a sanitary district "detaches" from the district when a city annexes it. The City argues that this statute applies and that it ends our analysis. Since the newly annexed territory now lies within the City's domain, as a matter of law, the City bears the responsibility for providing water service.

The Town, however, raises three arguments against the application of § 60.79(2), STATS., in this instance. We will address them seriatim.

First, it argues that § 60.79(2)(b) and (d), STATS., provides an exception to the above rule and must be considered in this case. The parts of these subsections relevant to the Town's argument provide:

> (b)  The city or village and the town sanitary district are subject to pars. (c) to (e) if territory constituting less than the entire town sanitary district is annexed or incorporated and:
>
> 1.  The territory is served by the town sanitary district with a water supply or sewerage system;
>
> . . . .
>
> (d) 1.  Any water supply or sewerage system, including all mains and all property of the system,

---

[3] 1995 Wis. Act 378, § 13 made minor changes to § 60.79(2), STATS. Since these changes do not affect our analysis, we rely on the former statute.

shall belong to and be operated by the district or the city or village, in whichever the major portion of the patrons reside on the date of annexation . . . .

Citing the above language, the Town describes how the water main which runs through the annexed territory is part of a "system" which serves the territory. Thus, this system (and the right to hook more patrons into it) should belong to the Town because the system, in its entirety, services 375 patrons who reside in the Town and one who resides within the City.

These subsections are obviously intended to set out an orderly procedure for dissolving a sanitary district when a city annexes only part of the territory it services. *See Washington Heights Sanitary Dist. v. City of Eau Claire*, 64 Wis. 2d 330, 334, 219 N.W.2d 317, 319 (1974).[4] Moreover, we observe that the statutes address the risk that management and operation of the water system might be jeopardized in such a scenario because the patrons would reside in different political subdivisions—some in the town that has the sanitary district and some in the city that annexed the territory. The statute resolves this problem by granting management authority to the municipality which serves the majority of patrons residing in the territory targeted for annexation. *See* § 60.79(2)(d), STATS.

---

[4] In *Washington Heights Sanitary Dist. v. City of Eau Claire*, 64 Wis. 2d 330, 334, 219 N.W.2d 317, 319 (1974), the court addressed a dispute between competing municipal water suppliers under a predecessor to § 60.79, STATS. The current statute, however, substantially incorporated the rules pertaining to the orderly dissolution of an annexed sanitary district. *See Town of Hallie v. City of Eau Claire (Town of Hallie I)*, 173 Wis. 2d 450, 457-58, 496 N.W.2d 656, 659-60 (Ct. App. 1992).

The risk of water service patrons residing in two different municipalities, however, is not present in this case because there are *no patrons* of either the Town or the City residing in the annexed territory. The patrons that the Town uses in its arithmetic all reside outside the annexed territory. Thus, what the Town contends should be counted are those future patrons who will be building property on the vacant land that comprises the annexed territory. But in *Town of Hallie v. City of Eau Claire (Town of Hallie I)*, 173 Wis. 2d 450, 456, 496 N.W.2d 656, 659 (Ct. App. 1992),[5] the court expressly concluded that the term "patron" within this subsection does not include "persons who would potentially receive water service from the district." The Town may have equipment within the territory which is well placed to serve people who will locate in the annexed territory, but the statute does not measure who has equipment. It only measures if either of the competing water providers has any patrons. Since there are no patrons in the annexed territory, the subsection does not apply. *See Washington Heights*, 64 Wis. 2d at 335, 219 N.W.2d at 320 ("Nothing in [the statutes] denies the city the right to construct new sewer facilities for annexed areas which are within the limits of a sanitary district but which were not serviced by that district.").

In its second argument, the Town attempts to distinguish *Town of Hallie I* and its rule that only existing patrons are counted. Although *Town of Hallie I* involved a similar dispute between a sanitary district and an annexing city, the Town contends that it should

---

[5] We refer to this case as *Town of Hallie I* to distinguish it from *Town of Hallie v. City of Eau Claire*, 176 Wis. 2d 391, 501 N.W.2d 49 (Ct. App. 1993), *overruled by Wagner Mobile, Inc. v. City of Madison*, 190 Wis. 2d 585, 527 N.W.2d 301 (1995).

be distinguished because the competing suppliers in that case both conceded that they did not have an operative "water supply system" in the annexed territory. *See Town of Hallie I*, 173 Wis. 2d at 456, 496 N.W.2d at 658 59. Here, however, the Town has installed equipment in the annexed territory and thus argues that the *Town of Hallie I* rule about future patrons is not applicable in this case.

Nonetheless, a closer look at the *Town of Hallie I* decision reveals that the court did confront an almost identical factual situation and thus its rule about counting only existing patrons who reside in the territory does apply. Indeed, the sanitary district in *Town of Hallie I* had also installed water mains that ran through the annexed territory. *Id.* at 453, 496 N.W.2d at 657. What the court found determinative, however, was whether anyone was actually receiving water service in the annexed territory. *See id.* at 456, 496 N.W.2d at 659. The court reached this conclusion after noting how the language in § 60.79(2)(d)2, STATS., defined a "patron" as a "location served." *See Town of Hallie I*, 173 Wis. 2d 456, 496 N.W.2d at 659. Given the legislature's concern about keeping patrons of a water district within the same political subdivision, it makes sense that the statute would only count patrons for the purpose of determining who should operate the system and not give any weight to whether a supplier had installed pipes or other equipment. The legislature determined that any issues about installed equipment (and debts) could be resolved by the PSC, which could value and divide the property through an administrative process. *See* §§ 60.79(2)(c) and 66.03(5), STATS.[6]

---

[6] 1995 Wis. Act 27, § 3314 made changes to § 66.03(5), STATS., which are not pertinent to this case.

We now turn to the Town's third and final argument against ruling that the annexed territory "detached" from the Town when the City annexed it. Conceding for the sake of this alternative argument that application of the counting process in § 60.79(2)(d), STATS., turns on whether there are any patrons in the territory, the Town asserts that its hydrants are providing service in the form of extra fire protection to the property owners within the annexed territory, namely, the City and the Bahrs. The Town contends that the City's firefighters, as probable users of the hydrants, are "patrons" who, along with the Bahrs, should be counted for the purpose of determining if the Town should be allowed to operate the water system in the annexed territory.

█

We conclude, however, that a firefighter who may hook a line onto a hydrant, or a property owner who benefits from such fire protection, is not a "patron" under § 60.79(2)(d), STATS. When we construe a statute, we consider the section together with its related sections. *Pulsfus Poultry Farms, Inc. v. Town of Leeds,* 149 Wis. 2d 797, 804, 440 N.W.2d 329, 332 (1989). Accordingly, the Town's argument requires that we determine if the legislature, based on the language it used in the other statutory sections relating to sanitary districts, intended to define "patrons" to include firefighters who will rely on water provided through fire hydrants.

█

We first observe that § 60.70(10), STATS.,[7] defines a "water supply system" to include the equipment used to deliver water to "consumers." We hold that this lan-

---

[7] 1995 Wis. Act 378, § 10 amended § 60.70(10), STATS. The statute now defines a "water system," not a "water supply system." Nonetheless, these changes in wording appear to have no

guage relates to personal and commercial uses of water, not the public safety issues related to fire protection. *See generally Town of Hallie I,* 173 Wis. 2d at 456-57, 496 N.W.2d at 659. Moreover, § 60.70(10) specifically excepts from the definition of a "water supply system" the "fixtures inside buildings served." Based on this choice of words, we are confident that the legislature was concerned about how water would be used by individuals for personal and commercial uses, not by firefighters who use water from hydrants to put out fires. *See id.*

██

Since we reject each of the Town's objections to the application of § 60.79(2)(a), STATS., we agree with the City that this section dictates the outcome in this case. When the City annexed the territory, it detached from the Town and became part of the City. Because there are no existing patrons in the territory, the process of counting existing patrons to determine who should operate the water system for the territory's future patrons is not relevant. The City has acquired complete authority to provide water service in its annexed territory.

At oral argument, the Town nonetheless expressed concern over the policy implications of limiting the counting process in § 60.79(2)(d), STATS., to measure only existing patrons who reside in the annexed territory. The Town argued that a water supplier's access to future customers was equally important to maintaining business with its current customers. The Town claimed that its loss of the right to serve the territory's future customers has negatively affected its financial picture. The Town maintains that it planned for these

substantive effect on the meaning of this statute and we will therefore cite to the former statute.

new customers when it originally designed the water system and thus has lost expected economies of scale.

There is merit in the Town's policy argument. Even from our inexpert review of the maps and studies, it appears that the Town could have been a ready and efficient supplier, possibly the most efficient supplier, for the new patrons who will locate within this territory. Moreover, we note how the loss of an expected market of new customers (and the loss of revenue) could hamper the Town's future development plans.

Nonetheless, the legislature decided that the principal risk in annexation is that the patrons of a town-operated system might find themselves in a new political subdivision. Therefore, it designed a methodology to divide water service systems between city and town utilities that gauged who provided water to the persons who reside in the annexed territory. The legislature, however, has not provided any means for calculating who is more entitled to future patrons who might reside on annexed land that is vacant and slated for development. Hence, even when the annexing city and sanitary district could both serve the future patrons who will settle in the annexed territory, if neither municipality has any existing customers within the territory, the right to service the future patrons automatically belongs to the annexing city. Any change in this allocation procedure must arise in the legislature.

Lastly, because § 60.79, STATS., resolves this dispute, we need not address the parties' arguments regarding § 196.50, STATS. As counsel for the Town correctly explained at oral argument, § 196.50 only applies when one utility provider threatens expansion into territory legally served by another utility provider. Since we conclude that § 60.79 operates to vest authority solely with the City, the Town has no claim that the

City's planned expansion of water service into the territory will interfere with its interests. We therefore reverse the injunction imposed by the circuit court. The City may proceed with development of water service in the annexed territory as it sees fit.

*By the Court.*—Judgment and order reversed.