STATE of Wisconsin, Plaintiff-Respondent,

v.

Thaddius Jason KAROW, Defendant-Appellant.†

Court of Appeals

*No. 89-0531-CR. Submitted on briefs October 17, 1989.—Decided January 17, 1990.*

(Also reported in 453 N.W.2d 181.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general.

Before Brown, P.J., Scott and Nettesheim, JJ.

SCOTT, J. Thaddius Jason Karow was convicted of first-degree murder, armed burglary and party to the crime of armed robbery. He was fourteen years, eight months old at the time of the crime. On appeal, Karow contends that: the trial court lacked competency to proceed on the burglary and robbery charges because his age restricts waiver of juvenile court jurisdiction to the murder charge; the evidence was insufficient to support the jury finding of nonconsent to enter the victim's home; and an inculpatory statement made to a juvenile intake worker after Karow invoked his right to counsel was erroneously admitted. We conclude that sec. 48.18(9), Stats., allows charging an offense related to the homicide once waiver is accomplished under sec. 48.18(1). We also conclude that the evidence was sufficient to support a

jury finding that Karow exceeded the scope of the consent given. Finally, we conclude that since the statement was not the product of interrogation or its equivalent, admitting it was not error. We affirm the judgment.

Eighty-year-old Grace Brown was found stabbed to death on the living room floor of her retirement community cottage. The contents of her wallet were strewn at her feet, furniture and a doormat were askew, and her car was missing. Found near Brown's body were two notes: one vulgar and threatening, the other bearing the name "Wayen," a phone number and address. Both notes were in Karow's handwriting. Also on the floor were a telephone book and a pen. Karow's fingerprints were found on the notes, the telephone book, the door and the doorjamb.

Karow and another teenager, Terrance Longsine, were apprehended the next day. Karow told authorities he and Longsine had planned to rob Brown, and, after entering her house, Karow "tackled" her, then repeatedly stabbed her in the back and neck with the knife Longsine retrieved from Brown's kitchen. They then drove off in her car.

On the state's petition, Karow was waived into adult court where he was charged with first-degree murder, armed burglary and party to the crime of armed robbery. After a three-day trial, the jury found him guilty on all counts. Karow appeals.

## WAIVER

Karow first argues that the trial court lacked competency to proceed with respect to the burglary and robbery charges. He asserts that since sec. 48.18(1), Stats., permits a child less than sixteen years old to be waived into adult court only for violations of secs. 940.01 and

940.02, Stats., the term "the offense" in sec. 48.18(9) simply refers back to the offenses enumerated in subsec. (1). The state responds that sec. 48.18(9) in fact expands the scope of subsec. (1), thus allowing other related offenses to be charged once waiver has occurred. We agree with the state.

A statute is ambiguous if reasonable persons could disagree as to its meaning. *Sonnenburg v. Grohskopf,* 144 Wis. 2d 62, 65, 422 N.W.2d 925, 926 (Ct. App. 1988). Whether it is ambiguous is a question of law which we review without deference to the trial court. *Id.*

The relevant portions of sec. 48.18, Stats., read:

> **(1)** If a child is alleged to have violated s. 940.01 or 940.02 on or after his or her 14th birthday or if a child is alleged to have violated any state criminal law on or after his or her 16th birthday, the child or district attorney may apply to the court to waive its jurisdiction under this chapter . . ..
>
> . . ..
> **(9)** If waiver is granted, sub. (1) does not restrict the authority of the district attorney to charge *the offense* he or she deems is appropriate and does not restrict the authority of any court or jury to convict the child in regard to any offense. [Emphasis added.]

Subsection (9) reasonably could be read to confine the prosecutor to charging the offense providing the basis for the waiver, sec. 940.01 or 940.02, Stats. The state's position, however, is that the statute does not expressly limit "the offense" to one of the named offenses because, in statutory construction, the singular includes the plural. Sec. 990.001(1), Stats. Accordingly, the statute also reasonably could be read to allow the prosecutor to charge

other offenses arising out of the same criminal transaction. We therefore conclude the statute is ambiguous.

Once we determine the language is ambiguous, we interpret the statute to ascertain and give effect to the legislature's intent, presuming that the legislature intended an interpretation that advances the statute's purpose. *Sonnenburg,* 144 Wis. 2d at 65, 422 N.W.2d at 927. One of the purposes of ch. 48, Stats., is "to remove from children committing delinquent acts the consequences of criminal behavior." Sec. 48.01(1)(c), Stats. However, the legislature expressly qualified that mandate by requiring that purpose to be effected only when "[c]onsistent with the protection of the public interest." *Id.*

We also look to the statute's history to determine legislative intent. *State ex rel. Girouard v. Circuit Court,* 149 Wis. 2d 578, 582, 439 N.W.2d 833, 835 (Ct. App. 1989). Section 48.18(9), Stats., was created at the same time sec. 48.18(1) was amended to allow fourteen- and fifteen-year-olds to be waived to adult court. Secs. 880h, 880i, 1987 Wis. Act 27. Both parties note the lack of additional legislative history which would aid in clarifying the intent behind the language of subsec. (9).

We construe subsec. (9) of sec. 48.18, Stats., as expanding the scope of subsec. (1) by permitting the charging of lesser-included or related crimes once waiver has occurred on the underlying offense. Our interpretation is consistent with the statute's purpose. Our interpretation is also consistent with our prior holdings that the prosecutive merit phase of a waiver proceeding is analogous to a preliminary hearing in adult court. *State v. Johnson,* 121 Wis. 2d 237, 250–51, 358 N.W.2d 824,

830-31 (Ct. App. 1984). Therefore, once jurisdiction has been waived as to sec. 940.01 or 940.02, Stats., the prosecutor may in his or her discretion also charge other offenses "so long as they are not wholly unrelated to the transactions or facts considered or testified to" at the waiver hearing. *Johnson,* 121 Wis. 2d at 251, 358 N.W.2d at 831. Here, the robbery and burglary charges are not wholly unrelated to the transactions or facts considered or testified to at the waiver hearing. We therefore conclude the trial court had competency to proceed as to those charges.

## CONSENT TO ENTER

Karow next alleges that the guilty verdict on the burglary charge is not supported by sufficient evidence. He specifically challenges the jury's finding that he entered Brown's home without her consent. He argues that neither the doors nor windows showed signs of forced entry, nor was there any definitive evidence that a struggle had occurred. In addition, Karow claims that the presence of the telephone book, the pen and the paper bearing the name "Wayen" and a phone number strongly suggest that Brown invited him into her home to use her telephone. Several elderly neighbors in fact testified that on the day of the murder two boys, one of them Karow, came to their homes asking to use the telephone. At two or three homes the boys claimed to be seeking the telephone number and address of someone named "Wayne Orvold." Karow asserts that this pattern evinces a scheme to which Brown unfortunately fell prey and as a result of her consent, the burglary conviction cannot stand. We disagree.

The element of nonconsent in a burglary action consists of two subelements: (1) entry without consent and (2) knowledge on the part of the defendant that such entry was without consent. *State v. Schantek,* 120 Wis. 2d 79, 82, 353 N.W.2d 832, 834 (Ct. App. 1984). Thus, the jury had to have found beyond a reasonable doubt that Karow entered Brown's home knowing she did not consent. A jury verdict will be overturned only if the evidence, when viewed most favorably to the state and the conviction, is inherently or patently incredible or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt. *State v. Allbaugh,* 148 Wis. 2d 807, 809, 436 N.W.2d 898, 899 (Ct. App. 1989).

We have held that the extent of the consent must be determined under the facts of the particular case. *Schantek,* 120 Wis. 2d at 84, 353 N.W.2d at 835. The facts may reveal that consent was all-encompassing, strictly limited or somewhere in between. *Id. Schantek* involved a gas station employee who, using a key provided by his employer, entered the premises after hours and took money in a bank bag. After being apprehended, Schantek admitted the entry and the theft but argued that his entry was with consent because he was given the key and was not expressly told that after-hours use of the key was prohibited. We disagreed, concluding that "the arrangement between Schantek and his employer clearly rendered certain presence inappropriate and thus beyond the limits of the employer's consent and Schantek's knowledge." *Id.* at 85, 353 N.W.2d at 835.

The *Schantek* rationale was expressly adopted in *State v. Collins,* 751 P.2d 837, 840–41 (Wash. 1988) *(en banc),* a case in point with the facts before us. There, a strange man came to the home of a seventy-two-year-old

woman. Only the woman and her elderly mother-in-law were at home. The man, Collins, asked if a Mr. Thatcher lived there. Seeing that Collins had a telephone number written down, one of the women offered to let him use the telephone. Once inside, Collins assaulted both women. He was convicted of second-degree rape, second-degree assault and first-degree burglary. Substantially relying on our reasoning in *Schantek*, the Washington Supreme Court affirmed the burglary conviction, holding that the facts there also dictated recognition of an implied limitation on the scope of the invitation to enter. *Id.* at 841.

We find the *Schantek/Collins* reasoning persuasive. We hold that an implied limitation on the scope of the consent to enter may be recognized, and we recognize it here. The record supports an inference, not patently incredible, that the consent Brown granted to Karow, a stranger, was limited to a specific area and a single purpose. That consent can in no way be reasonably construed to extend beyond the purpose for which it was granted.

## SUPPRESSION OF STATEMENT

The final issue is whether the trial court erred in admitting the inculpatory statement Karow made to a juvenile intake worker without counsel present after Karow invoked his right to counsel. Karow characterizes the meeting with the intake worker as an "interrogation." We disagree.

We will not upset the trial court's findings of historical facts unless they are contrary to the great weight and clear preponderance of the evidence. *State v. Kramar,*

149 Wis. 2d 767, 784, 440 N.W.2d 317, 324 (1989). The ultimate issue, however—whether Karow's *Miranda* rights were violated—is a question of constitutional fact which we determine independently. *Id.*

It is undisputed that Karow invoked his right to counsel, thus prohibiting further police-initiated interrogation without the presence of counsel. *Id.* at 785–86, 440 N.W.2d at 324. After speaking with his lawyer, Karow met with a juvenile intake worker, Dan Venne. Venne informed Karow of the first-degree murder charge and that Venne was going to interview him to determine Karow's proper placement. Venne informed Karow of his rights to counsel and against self-incrimination and informed Karow why he was being held in custody. After indicating he understood his rights, Karow spontaneously admitted to the crimes in some detail, saying that he was "not taking this alone . . .. Terry [Longsine] and I had a plan." Karow later sought to suppress his statement, calling it a product of improper interrogation.

Karow mischaracterizes the meeting with the juvenile intake worker as "interrogation." Section 48.067(2), Stats., requires an intake worker to "[i]nterview . . . any child who is taken into physical custody and not released" to determine the suitability of release or secure detention. Venne asked no questions other than whether Karow understood his rights. Nothing in the record suggests that Venne engaged in any artifice or coercion to extract from Karow a confession or other inculpatory statement. The interview, statutorily required, was not the "functional equivalent" of interrogation. *See State v. Cunningham,* 144 Wis. 2d 272, 278, 423 N.W.2d 862,

864 (1988). The statements were properly admitted at trial.

*By the Court.*—Judgment affirmed.