Robert L. BRANDT, Plaintiff-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION,
Defendant-Respondent.

Court of Appeals

*No. 90-0221. Oral argument October 29, 1990.—Decided
January 23, 1991.*

(Also reported in 466 N.W.2d 673.)

† Petition to review granted.

354

On behalf of the plaintiff-appellant there were briefs by *Patrick B. Howell* and *Curtis A. Paulsen* of *Frisch, Dudek, Ltd.* of Milwaukee, with oral argument by *Curtis A. Paulsen.*

On behalf of the defendant-respondent there was a brief and oral argument by *Earl G. Buehler,* attorney for Labor and Industry Review Commission.

Before Nettesheim, P.J., Scott and Anderson, JJ.

NETTESHEIM, P.J.   Robert Brandt appeals from an order dismissing his complaint seeking judicial review of a Labor and Industry Review Commission (LIRC) decision which upheld a hearing examiner's determina-

tion that Brandt must repay $22,716 to the Unemployment [Compensation] Reserve Fund. The circuit court concluded that it lacked subject matter jurisdiction to address Brandt's judicial review action because Brandt did not join his employer as an adverse party to the circuit court proceedings. The court therefore granted LIRC's motion to dismiss Brandt's action.

On appeal, Brandt raises two issues: (1) whether the circuit court properly accepted LIRC's brief in support of its motion to dismiss despite its citation to unpublished circuit court opinions; and (2) whether the circuit court properly ruled that Brandt's failure to name his employer as an adverse party deprived the court of subject matter jurisdiction.

We conclude that LIRC's citation of unpublished circuit court opinions was not improper. We also conclude that Brandt's failure to name his employer as an adverse party was fatal to his judicial review action, although we hold that the grounds for dismissal are more properly characterized as competency to proceed—not subject matter jurisdiction. Thus, we affirm the circuit court's dismissal of Brandt's action.

This action has its genesis in seven initial determinations issued by the Department of Industry, Labor and Human Relations (DILHR) in May of 1989. Pursuant to sec. 108.04(1)(g), Stats., DILHR found that Brandt had received overpayments of unemployment compensation benefits for various periods occurring over the course of seven years, beginning in 1982. Section 108.04 governs eligibility for unemployment benefits and sets forth the base wages used to calculate payments for various types of employees. Under sec. 108.04(1)(g)3, if a person claims unemployment benefits based on his or her employment by a corporation, and the person owns or controls a twenty-five percent or more ownership

interest in the corporation during the period for which benefits are claimed, the person will receive a reduced level of benefits.

DILHR found that during the years at issue, Brandt and his brother Richard were co-owners and employees of an asphalt paving construction business, Brandt Contractors, Inc., and that Brandt's ownership share was greater than twenty-five percent.

Brandt appealed DILHR's determination that he repay the excess benefits received. At the hearing before the examiner, Brandt appeared in person with his attorney; no representative of Brandt Contractors, Inc. was present. The case caption identified the matter as Brandt—in his capacity as an individual benefit recipient—versus Brandt Contractors, Inc. At the hearing, Brandt maintained that he owned a fifteen percent interest in Brandt Contractors and hence had received only those benefits to which he was entitled and no more. The examiner disagreed and issued a decision in May of 1989, upholding the department's initial determinations.

Brandt petitioned LIRC for review of the examiner's decision. LIRC affirmed.

On August 29, 1989, Brandt filed a summons and complaint in the circuit court, seeking judicial review of the LIRC ruling. Brandt named only LIRC as the adverse party in the caption of the summons and complaint. In addition, Brandt served only LIRC with the summons and complaint.[1]

Based upon Brandt's failure to name his employer as an adverse party, LIRC moved the circuit court to dismiss Brandt's judicial review action for lack of juris-

---

[1] An affidavit from Brandt's attorney in opposition to LIRC's dismissal motion recites that Brandt's employer received actual notice of Brandt's judicial review action.

diction. LIRC's brief in support of its motion contained citations to unpublished circuit court opinions. Brandt countered with a motion to strike LIRC's brief, arguing that the citations violated Rule 809.23(3), Stats. The circuit court denied Brandt's motion to strike LIRC's brief and granted LIRC's motion to dismiss. Brandt appeals.

## CITATIONS TO CIRCUIT COURT OPINIONS

Brandt argues that LIRC improperly cited to unpublished circuit court opinions in its brief supporting its motion to dismiss Brandt's action. Brandt maintains that, despite assurances by the circuit court that it would not treat LIRC's citations as controlling authority, the court's reasoning on the jurisdiction issue nevertheless tracked the course taken in the unpublished authorities, and the result was the dismissal of Brandt's claim.

Brandt rests his argument on three grounds. First, he indicates that the language of Rule 809.23(3), Stats., prohibits citation to unpublished opinions. Second, he argues that were we to construe Rule 809.23(3) otherwise, absurd results would obtain. Third, he states that, in actual practice, citation to unpublished circuit court decisions gives some litigants an unfair advantage. We conclude that Rule 809.23(3) does not ban citations to unpublished circuit court opinions. While the wisdom of such a rule might be questioned, we do not conclude that its application is absurd. Nor are we satisfied that potential unfairness in permitting such a practice permits us, as a court of appeals, to bar what the statute permits.

Interpretation of a statute presents a question of law which we review *de novo. See Delvaux v. Vanden Langenberg,* 130 Wis. 2d 464, 475, 387 N.W.2d 751, 756

(1986).[2] In construing a statute, we begin with the language of the statute itself, and if the language is clear on its face, we are precluded from referring to extrinsic sources to aid our interpretation. *See Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 419, 405 N.W.2d 354, 363 (Ct. App. 1987). Furthermore, the entire section of a statute and related sections are to be considered in its construction or interpretation: we do not read statutes out of context. *See State v. Barnes,* 127 Wis. 2d 34, 37, 377 N.W.2d 624, 625 (Ct. App. 1985).

Rule 809.23(3), Stats., provides:

> An unpublished opinion is of no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of res judicata, collateral estoppel, or law of the case.

Brandt argues that the Rule governs circuit court opinions as well as unpublished court of appeals opinions. We disagree. Looking to chapter 809 generally and Rule 809.23, Stats., specifically, only one clear and unambiguous meaning emerges—Rule 809.23(3) does not address directly or by implication or inference circuit court opinions.

Rule 809.23(3), Stats., is contained in the statutory chapter entitled "Rules Of Appellate Procedure." Rule 809.23 deals with the criteria and method for publication of court of appeals decisions. Subsection (2) of the Rule authorizes a publication committee composed of judges

[2]We have applied the traditional rules of statutory construction in cases involving Rules enacted by the supreme court. *See Schinner v. Schinner,* 143 Wis. 2d 81, 89-94, 420 N.W.2d 381, 384-86 (Ct. App. 1988).

of the court of appeals to determine whether a decision of the court of appeals should be published. Subsection (3), the provision at issue here, then provides that an unpublished opinion may not be cited for precedential value. We conclude that the statutory scenario of chapter 809 concerns appellate procedure generally and that Rule 809.23(3), *read in context,* concerns only court of appeals decisions.[3]

Brandt argues, however, that such an interpretation is absurd because it permits citation to a circuit court decision but precludes citation to an unpublished court of appeals decision reversing such ruling. This argument has some facial appeal because it points out a vacuum in the law: while Rule 809.23(3), Stats., bars citation to unpublished court of appeals decisions, there is no equivalent rule or statute governing circuit court opinions. However, under closer scrutiny, we conclude that our construction of the Rule is not unreasonable or absurd.

First, we expect that competent counsel, intending to cite a circuit court case, would update the case to learn its status if appealed. If an appellate reversal has occurred, we additionally expect that professional coun-

---

[3]The supreme court has not been called upon to construe Rule 809.23(3), Stats. However, in a *per curiam* opinion addressing a proposed amendment to Rule 809.23(3), the supreme court describes the statute in a manner which is consistent with our ruling here: "(Rule) 809.23(3), Stats. . . . provides that *unpublished opinions of the court of appeals* are of no precedential value and prohibits the citation of those opinions in any Wisconsin court as precedent or authority . . .." *In re Amendment of Section (Rule) 809.23(3), Stats.,* 155 Wis. 2d 832, 832, 456 N.W.2d 783, 783 (1990) (emphasis added).

sel would recognize the potential ethical peril of reliance upon a discredited authority.

Second, we note that Rule 809.23(3), Stats., is not a total gag rule. What the Rule prohibits is the citation of an unpublished court of appeals decision as precedent or authority, with three exceptions—res judicata, collateral estoppel or law of the case. The Rule does not purport to bar the citation of unpublished court of appeals decisions for other informational purposes. Informing a court that an unpublished appellate decision reversed a cited circuit court decision does not elevate the appellate decision to precedential or authoritative status. Rather, it simply informs the court as to the ultimate outcome of the case on appeal. This, we conclude, is not barred by the Rule.

Brandt next argues that citation to unpublished circuit court opinions should not be permitted because the "average practitioner" would be economically and tactically burdened because such opinions are not published or otherwise readily available to such practitioners. The supreme court's recent opinion in *In re Amendment of Section (Rule) 809.23(3), Stats.,* 155 Wis. 2d 832, 456 N.W.2d 783 (1990), supports Brandt's argument. There, the supreme court noted the potential for inequality in knowledge of and access to unpublished opinions of the court of appeals. For that and other reasons, the supreme court denied a petition by the State Bar of Wisconsin to permit citation to unpublished court of appeals opinions for informational purposes only.

We acknowledge that the supreme court's rationale in *In re Amendment of Section (Rule) 809.23(3), Stats.,* in relation to unpublished court of appeals opinions applies with equal, if not greater, force to circuit court decisions. Court of appeals decisions, unlike circuit court decisions, are "published" by various reporter services,

and hence the bar does have access to them. The same is not true of circuit court opinions. However, any "unfairness" resulting from the present state of the law which permits citation to circuit court opinions but prohibits citation to unpublished court of appeals decisions is properly left to the supreme court's rule-making authority or to the legislature. In the meantime, we believe that our construction of Rule 809.23(3), Stats., places some controls on the potential for abuse.

We leave this issue with one important concluding observation. The circuit court here *did not* consider the cited circuit court decisions as binding precedent or authority. Instead, the court expressly and correctly limited the purposes for which the unpublished circuit court decisions were used—for any persuasiveness that might be found in their reasoning and logic.

## COMPETENCY TO PROCEED

We turn next to the central issue on appeal: whether the circuit court correctly dismissed Brandt's claim for want of subject matter jurisdiction. In relevant part, sec. 102.23(1)(a), Stats., provides:

> The order or award granting or denying compensation . . . is subject to review only as provided in this section . . .. Within 30 days after the date of an order or award made by the commission . . . any party aggrieved thereby may by serving a complaint as provided in par. (b) and filing the summons and complaint with the clerk of the circuit court commence, in circuit court, an action against the commission for the review of the order or award, *in which action the adverse party shall also be made a defendant.* [Emphasis added.]

LIRC contends that Brandt Contractors, Inc., Brandt's employer, was the adverse party to the proceedings, and that Brandt's failure to join his employer mandated dismissal of the claim. LIRC points out that the employer is necessarily the adverse party in an unemployment benefits dispute because benefits paid to an employee are charged to the employer's account and the employer's tax rate increases when benefits are charged against its account. *See* secs. 108.16(2)(b) and 108.18, Stats. Conversely, overpayments are re-credited. *See* sec. 108.16(2m) (1985–86).

Brandt counters that situations may arise where there is, in effect, no adverse party and hence no joinder is required. This is such a case, Brandt reasons, because Brandt Contractors, Inc. chose not to contest the action and in fact supports Brandt's request for benefits.

### A. Subject Matter Jurisdiction and Competency to Proceed

We first state some fundamental law concerning the difference between subject matter jurisdiction and competency to proceed. Both parties (and the circuit court) characterize the constraint upon the circuit court's power to entertain Brandt's claim as lack of subject matter jurisdiction. We conclude, however, that what the circuit court lacked was competency to proceed.

Subject matter jurisdiction references the power of a court to deal with the general issues involved in an action. *See Black's Law Dictionary* at 1278 (5th ed. 1979). Subject matter jurisdiction is conferred on a court solely by the constitution and the statutes of the state. *Carlson v. Jones,* 147 Wis. 2d 630, 635, 433 N.W.2d 635, 637 (Ct. App. 1988). Article VII, sec. 8 of the Wisconsin

Constitution grants the circuit courts original jurisdiction in "all matters civil and criminal within this state . . .." Competency to proceed is a narrower concept which addresses the power of the circuit courts to exercise their subject matter jurisdiction. *See In re L.M.C.,* 146 Wis. 2d 377, 391–92, 432 N.W.2d 588, 594 (Ct. App. 1988).

By sec. 108.09(7), Stats., the legislature has decreed that circuit courts are empowered to conduct judicial review of unemployment compensation orders or awards. Thus, the circuit court had subject matter jurisdiction to review LIRC's decision. In this enabling legislation, the legislature has further decreed that such judicial review proceedings are to be taken pursuant to sec. 102.23(1)(a), Stats. This statute requires, *inter alia,* that the party seeking judicial review must join the adverse party. This provision, we conclude, travels to the circuit court's competency to proceed because it addresses a threshold requirement which must be satisfied before the circuit court may act. This requirement does not address the circuit court's subject matter jurisdiction to review unemployment compensation awards. Thus, the issue raised in the trial court and here is one which concerns competency to proceed—not subject matter jurisdiction.

B.  Statutory Construction

We now turn to the merits. The interpretation of a statute is a question of law. *In re B.S.,* 133 Wis. 2d 136, 138, 394 N.W.2d 750, 751 (Ct. App. 1986). We first inquire whether the statute is plain or ambiguous. *In re I.V.,* 109 Wis. 2d 407, 409, 326 N.W.2d 127, 128–29 (Ct. App. 1982). A statute, word or phrase is ambiguous, and use of the rules of construction proper, only when it is

capable of being interpreted by reasonably well-informed persons in two or more senses. *See Guertin v. Harbour Assurance Co. of Bermuda, Ltd.,* 135 Wis. 2d 334, 338, 400 N.W.2d 56, 58 (Ct. App. 1986), *aff'd,* 141 Wis. 2d 622, 415 N.W.2d 831 (1987). However, we observe that depending on the facts of a given case, the same statute may be found ambiguous in one setting and unambiguous in another. *Sauer v. Reliance Ins. Co.,* 152 Wis. 2d 234, 241, 448 N.W.2d 256, 259 (Ct. App. 1989). The case at bar presents such a situation.

As we have already noted, judicial review of unemployment compensation determinations is conducted pursuant to sec. 102.23, Stats., the statute which governs judicial review of worker's compensation orders and awards. *See Marathon Elec. Mfg. Corp. v. Industrial Comm'n,* 269 Wis. 394, 402, 69 N.W.2d 573, 577–78 (1955). But while the procedures for judicial review are the same, the review is spawned by markedly different administrative proceedings and philosophies: worker's compensation on the one hand, and unemployment compensation on the other. Thus, regardless of the meaning of "adverse party" for purposes of worker's compensation law, we must address the term in light of its application to unemployment compensation review proceedings.[4]

Section 102.23(1)(a), Stats., does not specifically state that the employer must be named in a judicial review proceeding. Nor does the statute recite that the employer constitutes the "adverse party." Therefore, we conclude that reasonable minds could differ as to whether "adverse party" means the employer for purposes of Brandt's unemployment compensation judicial

---

[4]Therefore, Brandt's citations to worker's compensation cases are not controlling.

review proceedings. We thus construe the statute. In so doing, we look to the scope, history, context, subject matter and object of the statute to discern the legislative intent. *Sterman v. Hornbeck*, 156 Wis. 2d 556, 563, 457 N.W.2d 874, 877 (Ct. App. 1990).

Here, we conclude that the context, subject matter and object of the statute assist in this analysis. Unemployment compensation benefits flow from a state-operated fund into which employers make prepayments. *See* secs. 108.14 and 108.16–18, Stats. As we have previously noted, benefits paid to an employee are charged to the employer's account in the unemployment reserve fund, the employer's tax rate is affected by charges against the account, and conversely, overpayments are re-credited.

Brandt contends that there is no support in the statutes for LIRC's position that recovery of benefit overpayments necessarily inures to the employer's benefit. It is Brandt's position, however, which lacks support in the law. The method by which an employer's contributions to the fund is calculated reveals that the employer's interests are always adversely impacted by a ruling favorable to the employee. This holds true whether or not the overpayments are recovered from the employee. When benefits paid out are deemed excessive, an adverse relationship between the employer and the employee is unavoidably drawn.

More specifically, if an employee should become unemployed, he or she draws benefits against the employer's "account" in the fund. *See* sec. 108.16(2)(a) and (2)(b), Stats. Conversely, when benefits are found to have been erroneously paid from an employer's account, the employer's account is re-credited even if the overpayment cannot be recovered. *See* sec. 108.16(2m)–(3), Stats. (1985–86), and sec. 108.16(1)–(3), Stats. The amount each employer must contribute to its account in

the fund is a percentage of its total payroll for a given calendar year. *See* sec. 108.18, Stats.

During its first year of payment to the unemployment compensation fund, the employer must contribute an amount equal to 2.7% of its payroll. Section 108.18(2), Stats. Over subsequent years, the employer's account will acquire a "reserve percentage" which refers to the status of the employer's account when DILHR computes the employer's contributions for the upcoming calendar year. *See* sec. 108.02(22), Stats. This "reserve percentage" will reflect activity in the employer's account respecting benefits debited and contributions credited for the year. Pursuant to the terms of sec. 108.18, the greater the amount the employer retains in the reserve, the lower the employer's contribution rate for the following year. *See* sec. 108.18(4), Stats. Conversely, an employer's contribution rate will increase as more benefits are charged against the account. *Id.* This statutory mechanism clearly pits the employer's interests against the employee's.

Thus, in this case, Brandt Contractors, Inc.'s rate of contribution would be increased if Brandt were allowed to retain the benefits paid. Such would certainly be a decision adverse to the economic interests of Brandt Contractors, Inc.

In addition, by its very language, sec. 102.23(1)(a), Stats., contemplates an entity beyond LIRC as an adverse party for the statute requires that, in addition to LIRC, "the adverse party shall also be made a defendant." Under the statutory mechanism reviewed above, we conclude that in an unemployment compensation judicial review case, the employee's adversary must be the employer, for by definition, no other person or entity

owes an employee wages.[5]

We therefore conclude that in an action to recover unemployment benefits previously paid,[6] the term "adverse party" as it is used in sec. 102.23(1)(a), Stats., must necessarily be construed to mean the employer.

Brandt argues, however, that despite any adverse impact upon his employer's contribution rate, his employer in this case chose not to contest the action, and hence cannot be said to be adverse. We reject this argument for it authorizes the employee to speak for the non-party employer. The employer's stance in the action should be obtained by virtue of its official status as a party—not by some second-hand means from one whose interests are, under the statutory scheme, adverse to the employer. By requiring the employer to be named as an adverse party in the judicial review proceedings, the law assures that the employer's position is accurately reported and its interests properly protected. Brandt's approach does not serve these ends.

For his final contention, Brandt argues that even if he was required to join his employer, his own status as a

---

[5]We note that situations may arise wherein an employee may draw on the accounts of more than one employer. *See, e.g.*, sec. 108.07, Stats. However, it remains that whether single or several, the employee's adversary in such a situation is still an employer.

[6]LIRC characterizes the underlying action as a continuing determination of eligibility to receive benefits and not recovery of benefits overpaid. However, in its pleadings, DILHR (and subsequently LIRC before the circuit court) has sought to obtain an order directing Brandt to repay monies received as benefits. In any event, it is the department's position that Brandt is not entitled to the funds. Hence, we treat the matter as one for the recovery of overpayment.

party to the proceedings cures any defect in joinder. Brandt maintains that because he is president of his employer corporation, notice of the proceedings to him was notice to the employer as well. As a result, Brandt argues, Brandt Contractors, Inc. was not prejudiced or misled by "this [the failure to name Brandt Contractors, Inc. in the caption of the summons and complaint] hypertechnical deficiency."

For the reasons previously stated, it cannot be said that Brandt's failure to join his employer was a "hypertechnical" defect. Rather, Brandt's failure to join Brandt Contractors, Inc. traveled to the very accuracy and integrity of the administrative review process.

Moreover, Brandt's "no harm, no foul" argument is not the law. If the circuit court is not competent to proceed and a *timely* objection is made, a prejudice inquiry is not appropriate or necessary. *See Mueller v. Brunn,* 105 Wis. 2d 171, 178, 313 N.W.2d 790, 793 (1982).

*By the Court.*—Order affirmed.