FIRST FEDERAL SAVINGS BANK, La Crosse-Madison,
Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant-
Appellant.

Court of Appeals

*No. 93–2158. Submitted on briefs May 10, 1994.—Decided
March 7, 1996.*

(Also reported in 547 N.W.2d 796.)

787

For the defendant-appellant the cause was submitted on the briefs of *Jorge L. Fuentes* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Thomas P. Godar* of *Michael, Best & Friedrich* of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.  In this appeal, we hold that the Department of Industry, Labor and Human Relations (DILHR) and the Labor and Industry Review Commission (LIRC) on review correctly concluded that First Federal Savings Bank, La Crosse-Madison (First Federal) did not succeed to the unemployment reserve accounts of First Federal Savings Bank-Madison (FF-Madison) which merged with First Federal Savings & Loan Association-La Crosse (FF-La Crosse) to form First Federal. We conclude that First Federal did not qualify as the "mandatory" successor to those accounts under § 108.16(8)(e)1, STATS., because at the time of their merger, FF-La Crosse and FF-Madison were not owned or controlled in whole or substantial part by the same interest or interests. We therefore reverse the circuit court's order setting aside LIRC's decision.

Before we address the merits of this appeal, we must first consider LIRC's procedural arguments.

LIRC argues that the circuit court lacked competence to consider First Federal's appeal because it did not name DILHR as a party. Section 102.23(1)(a), STATS., provides in part:

> Within 30 days after the date of an order or award made by the commission . . . any party aggrieved thereby may by serving a complaint as provided in par. (b) and filing the summons and complaint with the clerk of the circuit court commence, in circuit court, an action against the commission for the review of the order or award, *in which action the adverse party shall also be made a defendant.*

(Emphasis added.)

LIRC relies on *Brandt v. LIRC*, 160 Wis. 2d 353, 365-67, 466 N.W.2d 673, 678 (Ct. App. 1991), *aff'd,* 166 Wis. 2d 623, 483 N.W.2d 494 (1992). However, in *Brandt*, the adverse party who was not named was the employer. DILHR was not named as a party but that failure, if it was a failure, was not discussed by us or by the supreme court.

*Brandt* was a case in which DILHR had determined that Brandt received overpayment of unemployment compensation benefits. He petitioned for and received a hearing before a hearing examiner who affirmed DILHR's determination. DILHR was not named a party because it had acted as an adjudicatory body. The failure to name Brandt's employer as the adverse party was fatal because "Brandt's failure to join Brandt Contractors, Inc. traveled to the very accuracy and integrity of the administrative review process." *Brandt v. LIRC*, 166 Wis. 2d 623, 630, 480 N.W.2d 494, 497 (1992) (quoting *Brandt*, 160 Wis. 2d at 372, 466 N.W.2d at 680). Failure to name DILHR as a party in this case does not travel to the very accuracy

and integrity of the administrative review process because its position was identical to LIRC's position, and DILHR was represented by its Enforcements Section, in fact, by the same attorney, before LIRC and before the circuit court.

The case before us involves, at most, the "insubstantial and technical defect" of failing to name the department in the caption of the case. *See Nigbor v. DILHR*, 120 Wis. 2d 375, 381, 355 N.W.2d 532, 536 (1984). In *Nigbor*, the caption of the summons and complaint named DILHR rather than LIRC. The court noted that the legislature over time had exhibited considerable ambivalence as to whether actions to review determinations by DILHR were to be commenced against DILHR or against LIRC. *Id.* at 379-80, 355 N.W.2d at 535. The court said, "[e]ven though DILHR rather than the Commission was named in the caption, the body of [plaintiff's] complaint clearly showed that her grievance was against the Commission." *Id.* at 381, 355 N.W.2d at 536. Here, the body of First Federal's complaint clearly shows that its grievance is against DILHR.

Citing *Cruz v. ILHR Department*, 81 Wis. 2d 442, 453, 260 N.W.2d 692, 695-96 (1978), the *Nigbor* court stated that, "while we have required strict compliance with the terms of sec. 102.23, STATS., where the pleadings contain an insubstantial and technical defect and the appeal is brought in good faith, it is an abuse of discretion for the trial court to dismiss the action." 120 Wis. 2d at 381, 355 N.W.2d at 536. The *Cruz* court concluded that DILHR had received notice of the action, was completely aware of the claimant's intentions, and was in no way misled by the defect in the caption. 81 Wis. 2d at 453, 260 N.W.2d at 696. How-

ever, we agree with the supreme court's observation that it is poor practice not to name all parties in the caption. *Nigbor*, 120 Wis. 2d at 382, 355 N.W.2d at 536. LIRC fails to cite *Nigbor* in either of its briefs.

DILHR appeared in these proceedings through its Enforcements Section. LIRC's answer is signed by Jorge Fuentes, *Enforcements Section.* The Enforcements Section is an agency of DILHR, not LIRC. Throughout these proceedings, attorney Fuentes has appeared as attorney for the Enforcements Section. He signed the notice of appeal to our court on behalf of the Enforcements Section.

Where the employer is the adverse party, failure to name the employer as a party deprives the circuit court of competency to proceed because the error is more than technical. Without that designation, the circuit court cannot make a determination which will bind the employer. In *Brandt*, the supreme court pointed out that the mention of Brandt Contractors, Inc. in the complaint did not clearly indicate that the grievance was against the employer as well as against LIRC. 166 Wis. 2d at 628 n.4, 480 N.W.2d at 496. Here, the complaint and the answer both make clear that First Federal's grievance is against DILHR as well as LIRC. In that circumstance, failure to name DILHR in the caption is an "insubstantial and technical error which did not deprive the trial court of jurisdiction [competency] . . . ." *Nigbor*, 120 Wis. 2d at 382, 355 N.W.2d at 536.

In *Nigbor*, the court recognized that the legislature's ambivalence as to whether an action for review should be commenced against the department or the commission may have produced confusion for aggrieved parties wishing to obtain judicial review. *Id.* at 380, 355 N.W.2d at 535. First Federal's confusion

arose in this case because it was required to review LIRC's decision, not DILHR's. Where DILHR has defended its determination before LIRC and is fully aware of the issues, has notice of the review proceedings, and its attorney represents its position before the circuit court, failure to name the department as a party does not deprive the circuit court of competence to hear petitioner's appeal.

LIRC presents a further issue which is mooted by our reversal of the circuit court's decision. LIRC argues that the trial court should have dismissed First Federal's complaint because First Federal did not "explicitly" allege that LIRC acted in excess of its powers; that the order or award was procured by fraud; or that LIRC's findings of fact do not support its order or award. *See* § 102.23(1)(e), STATS. Because we conclude that LIRC correctly found that First Federal was not the mandatory successor to the unemployment reserve accounts of FF-Madison, whether First Federal's complaint was sufficient to raise this question is no longer an issue.

We now consider the merits of this appeal. For the purpose of paying employees unemployment benefits, § 108.16(1), STATS., establishes an "Unemployment Reserve Fund," to be administered by DILHR. Subsection (2)(a) provides: "A separate employer's account shall be maintained by the department as to each employer contributing to said fund." The employer's account can be either positive or negative depending on its contributions to the fund, *see* § 108.18(1)(a), STATS., and the benefits paid to unemployed and eligible employes, *see* § 108.03, STATS. If the business of an employer is "transferred," the transferee may be deemed the successor to the business's account if the conditions of § 108.16(8)(b) are satisfied.

792

A transferee of a business may be either a "mandatory successor" under § 108.16(8)(e), STATS., or an "optional successor" under § 108.16(8)(a)-(d).

Section 108.16(8)(e), STATS., provides in part:

> Notwithstanding par. (b), a transferee is deemed a successor for purposes of this chapter, if the department determines that all of the following conditions are satisfied:
> 1. At the time of business transfer, the transferor and the transferee are owned or controlled in whole or in substantial part . . . by the same interest or interests. . . .

First Federal claims that it meets this condition because effective June 1, 1989, FF-Madison merged with FF-La Crosse to form First Federal Savings. FF-Madison and FF-La Crosse are federally chartered savings banks and merged pursuant to 12 C.F.R. (Code of Federal Regulations) § 546.3 (1993),[1] under which all assets, property, rights and liabilities of the merging associations become the property of the resulting association.

First Federal argues that upon the effective date of the merger of FF-Madison and FF-La Crosse, it succeeded to the savings banks' "right" to their positive unemployment reserve accounts. LIRC argues, how-

---

[1] 12 C.F.R. § 546.3 (1993), provides:

> On the effective date of a merger in which the resulting association is a Federal association, all assets and property of the merging associations shall immediately, without any further act, become the property of the resulting association to the same extent as they were the property of the merging associations, and the resulting association shall be a continuation of the entity which absorbed the merging associations. All rights and obligations of the merging association shall remain unimpaired, and the resulting association shall, on the effective date of merger, succeed to all those rights and obligations.

ever, that the essential condition of § 108.16(8)(e)1, STATS., was not satisfied because at the time of the "business transfer," the transferors, FF-Madison and FF-La Crosse, were not owned or controlled in whole or in substantial part by the same interest or interests. FF-La Crosse and FF-Madison were each owned by their shareholders and there was no commonality of interest or interests.

First Federal argues, however, that successorship should be determined after the merger or at the point of the merger because at that time it succeeded to the "rights and obligations" of FF-Madison and FF-La Crosse, including the right of each savings bank to its unemployment reserve account. That argument would be persuasive except that the permissive successorship language and the legislative history of § 108.16(8)(e), STATS., require a different conclusion.

We conclude that § 108.16(8)(e), STATS., is ambiguous. A statute is ambiguous if reasonable persons could disagree as to its meaning. *Sonnenburg v. Grohskopf*, 144 Wis. 2d 62, 65, 422 N.W.2d 925, 926 (Ct. App. 1988). Whether it is ambiguous is a question of law which we review without deference to the trial court. *Id.* A reasonable person could conclude that "[a]t the time of business transfer," in the case of a merger, refers to the effective date of the merger, or as LIRC reads the statute, to that point in time immediately prior to the effective date of the merger.

Once we determine its language is ambiguous, we interpret a statute to determine and give effect to the legislature's intent. *State v. Karow*, 154 Wis. 2d 375, 381, 453 N.W.2d 181, 183 (Ct. App. 1990). We also look to the statute's history. *Id.* at 381, 453 N.W.2d at 184.

794

Section 108.16(8), STATS., provides in part:

(a) For purposes of this subsection a business is deemed transferred if any asset or any activity of an employer, whether organized or carried on for profit, nonprofit or governmental purposes, is transferred in whole or in part by any means, other than in the ordinary course of business.

(b) If the business of any employer is transferred, the transferee is deemed a successor for purposes of this chapter, if the department determines that all of the following conditions have been satisfied:

1. The transferee has continued or resumed the business of the transferor, in the same establishment or elsewhere; or the transferee has employed substantially the same employes as those employed by the transferor in connection with the business transferred.

2. The transfer included at least 25% of the transferor's total business as measured by comparing the payroll experience assignable to the portion of the business transferred with the transferor's total payroll experience for the last 4 completed quarters immediately preceding the date of transfer.

3. The same financing provisions under s. 108.15, 108.151 or 108.18 apply to the transferee as applied to the transferor on the date of the transfer.

4. The department has received a written application from the transferee requesting that it be deemed a successor. Such application must be received by the department on or before the contribution report and payment due date for the first full quarter following the date of transfer.

The parties agree that the conditions of subds. 1-3 are satisfied. However, DILHR rejected First Federal's application for optional successorship on the grounds

that its application for approval was untimely. First Federal has not appealed from that determination.

The apparent purpose of optional successorship is to allow a business to transfer part of its business to another entity and permit the transferee to succeed to the transferor's unemployment reserve account, with DILHR's approval. One of the conditions for an optional successorship is that "[t]he transfer included at least 25% of the transferor's total business . . . ." In the case of a mandatory successorship, the entire business is transferred.

The legislative history of § 108.16(8)(e), STATS., shows that the rationale for requiring a common interest between the transferee and transferor before there will be an automatic or mandatory successorship is that there is no practical method to effect a mandatory successorship between two employers who have unlike benefit financing, *i.e.*, contributory tax financing versus reimbursement financing. *See* SUCCESSORSHIP, 006, Bureau of Tax and Accounting § 2 (9-12-84). The Bureau's memorandum gives a brief history and background of § 108.16(8)(e) as follows:

> As of January 1, 1980 the successorship provisions of 108.16(8) were changed to allow for a mixture of mandatory and optional successorship. Prior to 1/1/80 all transfers resulted in mandatory successorship. Section 108.16[(8)(e)], effective 1/1/80, was created to define mandatory successorship through common ownership or control of the employers, as opposed to optional successorship available with "arms length" transfers between employers with no common ownership or interest.

SUCCESSORSHIP at § 3.

The Bureau considered that the change was necessary to eliminate confusion on the part of many

transferees who assumed that they would automatically continue the account of the transferor even though the transferor did not clearly fall in the mandatory category. The Bureau also believed that there would be less investigation time needed to determine if certain transfers were mandatory or optional and less time explaining to employers how these decisions were made. *Id.* at § 6. The Bureau believed that the clarification would lessen the department's conflicts in the interpretation of the statute. *Id.* The proposal was presented to the Unemployment Compensation Advisory Council under the heading of "housekeeping," and was approved by the Advisory Council September 12, 1984, and adopted by the legislature. *Id.* at §§ 9-10.

Thus, it is clear that the legislature intended that successorship would be mandatory only when the same interests were involved in a business transfer. We need not understand the difference between "contributory tax financing" and "reimbursement financing" to conclude that the legislature clearly did not permit mandatory successorship where the entities involved in a business transfer did not have common ownership or interests.

*By the Court.*—Order reversed.