COURT OF APPEALS
DECISION
DATED AND FILED

September 8, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP902**

Cir. Ct. No. **2019CV423**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

CLUB UNIQUE IMPROVEMENT CORPORATION,

    PETITIONER-APPELLANT,

  V.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,

    RESPONDENT-RESPONDENT,

GEORGE H. AND ELIZABETH S. KIEFER TRUST AND FONTANA TRUST,

    OTHER PARTIES-RESPONDENTS.

---

       APPEAL from an order of the circuit court for Walworth County: DANIEL S. JOHNSON, Judge. *Affirmed*.

       Before Gundrum, P.J., Neubauer and Reilly, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1　PER CURIAM. Club Unique Improvement Corporation (Club Unique or the Club) appeals from an order of the circuit court denying its petition for judicial review of a decision from an administrative law judge (ALJ). Club Unique argues that the ALJ erred in concluding that it had competency to proceed over a contested case hearing and in reversing the Wisconsin Department of Natural Resource's (DNR) decision to grant the Club's application for a permit to modify and expand its pier on Geneva Lake in the Village of Fontana. We affirm.

## BACKGROUND

¶2　The parties do not dispute the facts pertinent to this appeal. The DNR issued a permit which authorized the modification and expansion of Club Unique's existing pier. The Club's neighbors on the lake, the George H. and Elizabeth S. Kiefer Trust and the Fontana Trust (collectively, the Trusts) petitioned for administrative review of that decision on October 27, 2017, pursuant to WIS. STAT. § 30.209(1m) (2019-20).[1] The Trusts provided a copy of the petition to Club Unique via U.S. mail, sending the copy on November 3, 2017.

¶3　Club Unique filed an objection to the petition. It argued that the petition should be dismissed because the Trusts' failure to provide the Club with a copy simultaneously with its filing resulted in the ALJ losing competency to proceed over the administrative review hearing. The ALJ concluded that the

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

objection was without foundation in the law, denied the motion to dismiss, and proceeded to hold a contested case hearing on the petition.

¶4    Both sides were represented by attorneys and provided evidence and argument at the administrative hearing, with Club Unique arguing in favor of modifying and expanding its existing pier and the Trusts opposing modification and expansion.  As relevant to this appeal, the ALJ made the following findings of fact based on testimony and exhibits presented at the hearing:

> Club Unique Improvement Corporation is a non-stock, non-profit corporation and the Club Unique subdivision consists of 19 numbered lots and 3 lots denoted with letters; the Club owns Lots A, B, C and 17.  There are a total of 4 riparian properties within the Club Unique Subdivision.  The Kiefer Trust … owns riparian Lots 1 and 2, and the Fontana Trust … owns riparian Lot 3 (as well as Lot 4 behind it, which is non-riparian).  Lot A is the Club's riparian property; it is the 50.66 feet of shoreline property that contains the pier at issue.

> The existing pier contains 7 slips, which are owned by 7 of the non-riparian property owners.  These boat slips have been a vested property right of the individual property owners and have transferred with the land since 1977, at which time there were 6 slips, and the 7th was added in 1991.

> The proposed pier expansion is intended to create those same rights in the new pier slips for 6 additional property owners….

> The examination of need for a pier permit begins with guidance known as the pier planner, a well-established guidance document published by the DNR, which states that a riparian owner is limited to 2 boat slips for every 50 feet of shoreline ….

> The present configuration at Club Unique, with 7 mooring buoys, involves the mooring buoys being placed up to an additional 180 feet beyond the existing 167-foot pier, and the slow no wake buoy being placed approximately 60 feet past the last mooring buoy, or approximately 410 feet from shore.

> The practical effect of the mooring buoys is to create a safe haven for non-motorized users of this part of the lake, known as Rainbow Bay, such as kayakers, paddle boarders, and swimmers, and also for smaller craft such as that used by individual fishermen….

The ALJ made several additional findings of fact, none of which are pertinent to our resolution of this appeal.

¶5 After the evidentiary hearing, the ALJ denied Club Unique's permit application, concluding that the pier modification and expansion proposed by the Club was not in the public interest, did not meet applicable permit standards, and unlawfully created riparian rights for nonriparian owners. The DNR subsequently adopted the ALJ's decision as the agency's own.[2]

¶6 The Club sought judicial review of that determination. The circuit court upheld the ALJ on all grounds, finding that the ALJ had competency to proceed over the action, that substantial evidence supported the factual determinations, and that the ALJ correctly interpreted the law governing permit standards such that it properly denied the Club's permit application. Club Unique appeals.

---

[2] In the interest of simplicity, as did the circuit court, we refer to the ALJ's decision because the findings of fact and conclusions of law were accepted by the DNR by operation of WIS. STAT. § 227.46(3)(a) and WIS. ADMIN. CODE § NR 2.115(1). We recognize that the decision at issue on appeal is now the DNR's final decision.

**DISCUSSION**

*Standard of Review*

¶7      On appeal, "we review the administrative agency's decision, not that of the circuit court." *See **Tetra Tech EC, Inc. v. DOR***, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21. We review the agency's legal conclusions de novo, but may benefit from its analysis. *See **id.*** In a case such as the one here, where the pertinent facts are not in dispute, "we address only questions of law." *See **id.***

*The ALJ had Competency to Proceed Over the Contested Case Hearing*

¶8      The parties agree that the DNR and ALJ had jurisdiction to consider the Club's permit application, but disagree as to whether the ALJ had competency to proceed. This is a threshold issue that we must decide before we consider the merits of Club Unique's permit application. *See generally **Brandt v. LIRC***, 160 Wis. 2d 353, 367, 466 N.W.2d 673 (Ct. App. 1991), *aff'd*, 166 Wis. 2d 623, 480 N.W.2d 494 (1992) (competency to proceed is "a threshold requirement which must be satisfied before the circuit court may act").

¶9      The parties also agree that the application of this concept to administrative proceedings has been applied in such cases and is appropriate here. *See **Stern v. WERC***, 2006 WI App 193, ¶¶22-23, 26, 33, 296 Wis. 2d 306, 722 N.W.2d 594 (explaining that the question on review was whether failure to comply with statutory time limits affects an agency's competency to proceed and whether the defect can be waived); *see generally **Baker v. DHS***, 2012 WI App 71, ¶¶3, 13, 342 Wis. 2d 174, 816 N.W.2d 337 (upholding ALJ dismissal of administrative appeal for failure to timely file with agency).

¶10 Club Unique argues that the ALJ lacked competency to proceed because the Trusts failed to simultaneously provide the Club with a copy of the petition for administrative review upon filing it with the agency, in accordance with WIS. STAT. § 30.209(1m)(e).[3] The Trusts do not contest that they did not simultaneously file the petition, but argue that this failure on their part did not deprive the ALJ of competency to review the DNR's initial grant of the permit application.

¶11 "Many errors in statutory procedure have no effect on … competency. Only when the failure to abide by a statutory mandate is 'central to the statutory scheme' of which it is a part will … competency to proceed be implicated." *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶10, 273 Wis. 2d 76, 681 N.W.2d 190 (citation omitted).[4] Club Unique argues that the provision from WIS. STAT. § 30.209(1m)(e) requiring that a party seeking administrative

---

[3] WISCONSIN STAT. § 30.209(1m)(e) provides as follows:

> (1m) REQUEST FOR ADMINISTRATIVE REVIEW.
>
> ….
>
> (e) The petitioner shall file a copy of the petition with the department. If the petitioner is not the applicant, the petitioner shall simultaneously provide a copy of the petition to the applicant. The applicant may file a response to the petition with the department. If the applicant files a response under this paragraph, it shall be filed within 15 days after the petition is filed.

[4] Club Unique first argues that the application of the competency concept to administrative proceedings is appropriate, citing to *Baker v. DHS*, 2012 WI App 71, 342 Wis. 2d 174, 816 N.W.2d 337 and *Stern v. WERC*, 2006 WI App 193, 296 Wis. 2d 306, 722 N.W.2d 594, but later argues the opposite—that the common law competency inquiry of "central to the statutory scheme" is not applicable in administrative proceedings—without citation to any on point authority. As we explain above, we conclude that it is appropriate to apply the inquiry to administrative proceedings and do not address this issue further.

review of a DNR permit decision to "simultaneously provide a copy of the petition to the [permit] applicant" is a mandatory requirement and that failure to comply with para. (e) automatically results in the agency losing competency to proceed. In other words, the Club argues that it is "central to the statutory scheme" for a petitioner to simultaneously provide a copy of the petition to the permit applicant upon filing with the agency. The Trusts disagree, asserting that para. (e) is not central to the statutory scheme for a number of reasons.

¶12 We first articulated the "central to the statutory scheme" test in *State v. Bollig*, 222 Wis. 2d 558, 567-68, 587 N.W.2d 908 (Ct. App. 1998). *See DWD v. LIRC*, 2016 WI App 21, ¶10, 367 Wis. 2d 609, 877 N.W.2d 620. In *Bollig*, we considered earlier cases and explained that the proper inquiry is "whether the legislative purpose of the statutory scheme could be fulfilled, without strictly following the statutory directive." *Bollig*, 222 Wis. 2d at 567-68. We further determined that this test is "very similar" to that used in deciding whether a personal jurisdiction defect is fundamental or technical. *Id.* at 568. Thus, as we have stated, "minor … deviations from statutory requirements may be permitted" as long as the failure to abide by the requirement amounts to "a mere technical defect, the failure of which is nonprejudicial[.]" *DWD*, 367 Wis. 2d 609, ¶¶12-13.

¶13 Our supreme court has explained that if a statute is directory, as opposed to mandatory, noncompliance does not remove a court's competency. *Eby v. Kozarek*, 153 Wis. 2d 75, 78-79, 450 N.W.2d 249 (1990); *see also Village of Elm Grove v. Brefka*, 2013 WI 54, ¶¶15, 17-18, 348 Wis. 2d 282, 832 N.W.2d 121. In other words, a directory provision is not central to the statutory scheme.

¶14 In *Eby*, the court considered whether the plaintiff's failure to timely comply with a statute providing that a party "'shall,' within 15 days after the date

of filing an action in court, file a request for mediation" deprived the circuit court of competency. *Eby*, 153 Wis. 2d at 79 (quoting WIS. STAT. § 655.445(1) (1985-1986)). The court concluded that the plaintiff's technical failure to comply with the statute's time limit did not affect the court's competency. *Eby*, 153 Wis. 2d at 79-81. The court explained that "'[i]n determining whether a statutory provision is mandatory or directory'" a court should consider "'the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation.'" *Id.* at 80 (citations omitted). In *Eby*, the statute at issue did "not explicitly provide that an action is invalidated if a request for mediation is not made within 15 days of the date the action was filed." *Id.* at 81. Because the legislature could have provided for dismissal as a remedy for failure to timely file a mediation request but did not do so, the court concluded that the time limit was not mandatory and, as such, failure to timely comply did not result in a lack of competency. *Id.* at 80-81.

¶15 Applying *Eby* to the statute in question here, we similarly conclude that the Trusts' failure to simultaneously provide Club Unique with the petition for administrative review did not result in the ALJ losing competency to hold a contested case hearing. As in *Eby*, the current case involves application of a statute using the word "shall," imposes time limits for certain procedural actions, and lacks a penalty provision for noncompliance. *See generally Eby*, 153 Wis. 2d 75. Under WIS. STAT. § 30.209, the receipt of the notice triggers the time period for an optional response on the part of the applicant rather than a required response. The notice associated with that optional response is not central to the underlying statutory purpose of timely commencement of administrative hearings because it has no bearing on the DNR's deadline in which to act. Regardless of

8

when the applicant receives a copy of the petition, the DNR must either grant or deny the requested hearing within 30 days after the petition is filed. Sec. 30.209(1m)(f). Notably, once the hearing request is filed, the DNR issues a separate notice to the applicant of the hearing under § 30.209(2)(d).

¶16     The simultaneous service provision is not central to the statutory scheme because it has no effect on the ability of the agency to promptly determine whether to grant or deny the petition, and if granted, to schedule a hearing. Any failure to comply with the notice requirement for the petitioner has no impact on the ability of the DNR to move the process forward or in providing notice to the applicant of the hearing. Indeed, Club Unique fails to demonstrate that it suffered any prejudice as a result of the Trusts' failure to simultaneously provide the Club with its petition for a contested case hearing. *See **DWD***, 367 Wis. 2d 609, ¶¶12-13. The Club was represented by an attorney at the hearing and presented evidence and argument just as the Trusts did. We therefore conclude that the failure of the Trusts to comply with the technical requirement from WIS. STAT. § 30.209(1m)(e) did not result in the agency losing competency to proceed.

*The ALJ Properly Denied Club Unique's Application to Modify and Expand Its Pier Because the Club's Plan Violates Wisconsin Law*

¶17     The ALJ held that the Club's permit application must be denied because, among other reasons, the Club's modification and expansion plan would convey riparian rights to nonriparian owners. As before the ALJ, the Club argues on appeal that its proposed modification and expansion permit application should be granted. The Trusts and the DNR disagree.

¶18     Prior to April 9, 1994, Wisconsin recognized the ability of a riparian landowner to convey riparian rights by easement. ***Konneker v. Romano***, 2010 WI

65, ¶27, 326 Wis. 2d 268, 785 N.W.2d 432.  A landowner's riparian rights include the right to construct a pier.  *Id.*  WISCONSIN STAT. § 30.133, however, now prohibits the "grant by an easement or by a similar conveyance any riparian right in the land to another person, except for the right to cross the land" to reach navigable water.[5]  Sec. 30.133(1).  WISCONSIN ADMIN. CODE § NR 326.03(11) defines a "similar conveyance" for purposes of § 30.133 to mean "any transfer in excess of 2 years."  This statutory prohibition has been consistently applied to prohibit nonriparians from acquiring pier rights.  *See generally **ABKA Ltd. P'ship v. DNR**,* 2002 WI 106, 255 Wis. 2d 486, 648 N.W.2d 854; ***Berkos v. Shipwreck Bay Condo. Ass'n***, 2008 WI App 122, 313 Wis. 2d 609, 758 N.W.2d 215.

¶19     When the Club Unique subdivision was established in 1976, it retained a riparian parcel to provide access to nonriparian owners.  The Club's 1977 corporate resolution provides for the placement of a pier and states "[t]he slips shall upon payment therefore be a vested exclusive owner's right and continue into the future."  The resolution noted that "[a]n owner of a slip may sell or assign a slip to another member of the Club."  Consistent with this ownership arrangement, slips were historically purchased through a bill of sale.  When any

---

[5] WISCONSIN STAT. § 30.133, "Prohibition against conveyance of riparian rights," provides in pertinent part as follows:

> (1)  Beginning on April 9, 1994, and except as provided in [WIS. STAT. §] 30.1335, no owner of riparian land that abuts a navigable water may grant by an easement or by a similar conveyance any riparian right in the land to another person, except for the right to cross the land in order to have access to the navigable water.  This right to cross the land may not include the right to place any structure or material, including a boat docking facility, as defined in [§] 30.1335(1)(a), in the navigable water.

Sec. 30.133(1).

sale or agreement predated the 1994 date in WIS. STAT. § 30.133, those original slips are grandfathered. However, the Club now claims that when it creates six new slips it can also permanently convey them to other nonriparian owners.

¶20 When the Club filed its permit application for the six new slips, it executed an "Indemnification Agreement" with the nonriparian members who would be owning slips under the new permit. This agreement provided that these members, "will be assigned and will occupy the newly created boat slips, and will enjoy the same right to use a boat slip as enjoyed by other members of the Corporation." These slips are to be designated for the exclusive use of nonriparian members.

¶21 The Club's 1977 resolution to install the original pier and the indemnification agreement associated with the Club's permit application confirm that both the original pier slips and the new pier slips were dedicated by the Club to the owners of individual nonriparian lots for their exclusive use. That is, they will enjoy the same vested right as the owners of the original six slips under the 1977 resolution, for an unlimited period of time. As the ALJ found, "the intention of this expansion is to create boat slips for the [six] property owners who do not presently own boat slips." This is a "conveyance" prohibited by WIS. STAT. § 30.133(1) and WIS. ADMIN. CODE § NR 326.03(11).

¶22 In *Anchor Point Condominium Owner's Ass'n v. Fish Tale Properties, LLC*, 2008 WI App 133, ¶14, 313 Wis. 2d 592, 758 N.W.2d 144, we held that the right to use a pier or a boat slip is a riparian right subject to WIS. STAT. § 30.133. We explicitly rejected the argument that only pier *placement*, not pier *use*, is a riparian right, and held that the attempt to transfer the right to use a

pier or boat slip to nonriparians is a clear violation of the plain terms of § 30.133. *Anchor Point*, 313 Wis. 2d 592, ¶13.

¶23 Citing to *Anchor Point*, the ALJ concluded that the "indemnification agreement is clear evidence that this pier expansion was intended for [the] explicit purpose [of transferring the right to use a pier and boat slip] and would thus unlawfully convey riparian rights." The Club attempts to circumvent the prohibition in WIS. STAT. § 30.133 by claiming that it can switch out existing moorings for slips and then assert that all of the slips are grandfathered as rights granted prior to the statute's effective date in 1994. Concluding that it owed no deference to the ALJ's legal conclusion on this point, the circuit court nonetheless upheld the ALJ's determination that expanding the pier in the manner proposed in the permit application "by changing the use from that of mooring buoys to boat slips [is], in essence ... an exercise of a new or a different riparian right …."

¶24 We agree with the conclusion of the ALJ and the circuit court; to create any such riparian rights for nonriparian owners would be in direct contravention of WIS. STAT. § 30.133. Whether the riparian rights are being exercised through the use of a pier, a boat slip, or a mooring buoy, the simple fact is that the statute explicitly prohibits the conveyance of "any riparian right … except for the right to cross the land in order to have access to the navigable water." Sec. 30.133(1). Directly to the point, the statute provides that "[t]his right to cross the land may not include the right to place any structure or material … in the navigable water." *Id.* Club Unique fails to provide any authority to support a conclusion that the legislature somehow meant to exclude new boat slips from this prohibition against the conveyance of riparian rights to nonriparians. It clearly could have done so if that was its intention. *See, e.g., State v. Zawistowski*, 95 Wis. 2d 250, 262, 290 N.W.2d 303 (1980) ("If the legislature had intended the …

12

law to be under the permit procedure of the later statute it could have modified the … law to say so.").

## CONCLUSION

¶25    For the foregoing reasons, we conclude that the Trusts' failure to comply with the simultaneous service provision of WIS. STAT. § 30.209(1m)(e) did not deprive the ALJ of competency to proceed over the contested case hearing challenging the grant of Club Unique's permit application.  We further conclude that the ALJ properly denied the permit application because to grant the modification and expansion of the pier as proposed would violate WIS. STAT. § 30.133 by conveying riparian rights to nonriparian owners.[6]

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Because our conclusion that the time limit in the statute is not central to the statutory scheme is dispositive as to the administrative agency's competency to proceed, we need not address the parties' other competency arguments.  *See Lake Delavan Prop. Co. v. City of Delavan*, 2014 WI App 35, ¶14, 353 Wis. 2d 173, 844 N.W.2d 632 (when one issue is dispositive on appeal, we need not address other issues).  We also need not address the parties' other arguments regarding the merits of the permit application because our conclusion that granting the permit would violate WIS. STAT. § 30.133 is dispositive.